761 So.2d 14 (2000)
STATE of Louisiana
v.
Fulgenio RODRIGUEZ.
No. 99-K-914.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 2000.
Writ Denied April 7, 2000.
*15 George P. Vedros, Indigent Defender Board, Gretna, Louisiana, Attorney for Appellant Fulgenio Rodriguez.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Richard Bates, Assistant District Attorneys, Gretna, Louisiana, Attorney for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CANNELLA, Judge.
Defendant, Fulgenio Rodriguez, filed a writ application in this court seeking review of the trial court judgment denying his motion to suppress evidence seized without a warrant from outside of an automobile in which he was a passenger and with a warrant from inside an apartment in which he was a resident. We granted the writ and set the case for briefing, argument and opinion. For the reasons which follow, we reverse and remand.
At the hearing on the motion to suppress, only one witness was called to testify, Detective Robert Gerdes, a Jefferson Parish Narcotics Officer. Detective Gerdes testified that he has been employed by the Jefferson Parish Sheriffs Office "under five years." For "under four years" he has been assigned to the Narcotics Section. Detective Gerdes related that in November of 1998 he received information from Frank Garza, a United States Drug Enforcement Administration Agent, that the agent had received information from a reliable confidential informant that "the residence of 2121 Cleary Avenue, Apt. 10, was involved in wholesale distribution and storage of heroin. More specifically, Special Agent Garza learned on November 20, 1998, that a large quantity of heroin was to be delivered by one of the residents of 2121 Cleary Avenue, Apt. 10." Detective Gerdes stated that he did not know when the confidential informant had supplied the information to the agent.
Detective Gerdes set up surveillance on the date indicated at approximately 3:00 p.m. When asked why it was set up at that time, he replied, "It was set up on a particular time relevant to some information that some activity was supposed to transpire between a particular time." On redirect, *16 he stated that the surveillance was set up within a specified time frame, although the time frame was not stated. Detective Gerdes testified that to his knowledge the surveillance was the first activity associated with this apartment or with the information provided by the confidential informant.
At approximately 3:56 p.m. Detective Gerdes saw two individuals exit the apartment. He stated that they did not act suspiciously, but entered a vehicle located in the apartment's parking lot. The officers were not looking for a particular vehicle, nor were they looking for a particular person as a result of their surveillance. When the individuals entered the car, the officers conducted a registration check on the vehicle which indicated the vehicle was registered to a person named Figueroa at the address specified by the informant. Defendant was seated in the passenger seat. The individuals drove away. Detective Gerdes and Detective Joe Phan followed in an unmarked police vehicle. The officers followed for about five blocks but did not observe any suspicious activity before they activated the lights and siren on the police vehicle. The only factor causing Detective Gerdes to be suspicious of these individuals was that they left that apartment. The vehicle pulled into a business located in the 3700 block of Veterans, the driver opened his door and fled on foot. Detective Gerdes testified that he then observed the passenger throw a black plastic bag out of the driver's side of the vehicle, which landed on the ground. The officer stated that the object could not have been dropped by the person fleeing the scene. The person fleeing the scene was not apprehended. The stop occurred at approximately 4:00 p.m. The officers recovered the discarded object and found that it held two clear plastic bags, each of which contained a brown powder. He field tested the items and found they tested positive for heroin. Defendant was then placed under arrest.
Detective Gerdes subsequently applied for a search warrant for the apartment. Although the affidavit for the search warrant was not introduced into evidence at the suppression hearing, the state concedes that the validity of the search warrant is dependent on the evidence obtained as a result of the vehicle stop. After defendant was arrested, his keys were taken from him and officers entered the apartment to secure it while the search warrant was being acquired. Detective Gerdes, who prepared the warrant, had no communication with the officers who were in the apartment. A dog was brought into the residence after the warrant was signed. The dog alerted Detective Gerdes to the refrigerator. Heroin was recovered from the refrigerator. No other narcotics were found in the apartment. In addition, however, defendant's clothing, a digital scale and miscellaneous paperwork in defendant's name were found in the apartment.
Detective Gerdes denied planting the narcotics at the scene of the stop and at the apartment.
Defense counsel argued below that the initial stop was illegal and, therefore, the evidence seized from that stop must be suppressed. He also argued that the search warrant was based on information from the illegal stop and, therefore, the warrant was improper and the evidence seized from the apartment pursuant thereto must also be suppressed. The trial court took the matter under advisement and denied the motion to suppress on August 12, 1999.
Defendant filed a writ application requesting a stay order and seeking the reversal of the trial judge's denial of his motion to suppress evidence seized from an allegedly illegal vehicle stop and evidence obtained from the subsequent warrant authorized search of the apartment. On August 27, 1999, this court granted relator's request for a stay pending further action by the court. This court granted a writ of review on September 13, 1999, ordering, *17 inter alia, that the matter be set for lodging of the record, briefing and oral argument.
Defendant argues to this court, as he did in trial court, that the initial stop of the vehicle in which the defendant was a passenger was illegal because it was not based on reasonable suspicion by the police officer making the stop that criminal activity was taking place. Absent a valid stop, any evidence seized pursuant thereto must be suppressed. Further, the search warrant of the apartment was based on the illegally obtained evidence seized from the vehicle stop. Therefore, the evidence seized from the apartment must also be suppressed.
The State argues to the contrary that there were ample facts within the knowledge of the police officer to support the investigatory stop of the vehicle and seizure of the narcotics pursuant thereto. Therefore, the seizure of the narcotics pursuant to the vehicle stop was legal and the search warrant obtained thereafter, based on the drugs seized from the vehicle is also valid.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703, subd. D; State v. Alexander, 92-2179 (La.App. 4th Cir. 2/11/94), 632 So.2d 853. The State can meet this burden by showing that the evidence was seized pursuant to a valid investigatory stop. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity. Based on the totality of the circumstances, the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. State v. Moreno, 619 So.2d 62 (La.1993). Under certain circumstances an informant's tip can provide reasonable cause to detain and question a suspect. State v. Perique, 340 So.2d 1369 (La.1976). State v. Chirlow, 617 So.2d 1 (La.App. 5th Cir.1992). The United States Supreme Court, in Alabama v. White, 496 U.S. 325, 327, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990), expounded on the use of informant information in judging whether reasonable suspicion exists stating:
Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.... Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors-quantity and quality-are considered in the "totality of the circumstances-the whole picture"... that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.
496 U.S. at 330, 110 S.Ct. at 2416.
In White, an anonymous caller informed police that a woman would leave a specific apartment at a particular time, get into a specifically identified vehicle which had a broken taillight and drive to a named motel, while in possession of cocaine in a brown attache case. The officers set up surveillance of the apartment within the specified time frame. They observed a woman, carrying nothing in her hands, get into the described vehicle which was parked in front of the apartment. They followed her as she took the most direct route to the motel. When she neared the motel, she was stopped. Defendant consented to a search of the vehicle and marijuana was discovered in a brown attache case located in the car.
*18 It was held in White that the anonymous tip provided specific details which were sufficiently corroborated by the officers to furnish reasonable suspicion that defendant was engaged in criminal activity. The White court considered it important that the tip contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of defendant.
In contrast to White, which the Supreme Court characterized as a "close case," the informant's tip in the instant case does not provide a range of specific details that could be corroborated by the officers. In fact, the details provided amount to little more than an address.
First, no information was provided to establish the veracity, reliability or basis of knowledge of the informant. Further, the officer specifically testified that he did not know when the informant's tip was received. Second, the information provided herein was painfully lacking in specificity and can be described as sparse at best. The information provided did not describe a particular person, by name or description, a particular vehicle, by make, color or license number, or a particular place where the vehicle would go. Rather, the information only provided that "some activity was supposed to transpire between a particular time" at a specific apartment. It was also stated "that a large quantity of heroin was to be delivered by one of the residents" of the apartment but did not specify whether it was to be delivered to or from the apartment. On the first surveillance of the apartment, the officers saw two persons leave the apartment empty handed and get into an automobile and drive off in a completely unsuspicious manner. Although the officer on redirect stated that his surveillance was within the time frame given by the informant, that time frame was not specified.[1] Moreover, the testifying officer candidly admitted that he would have stopped anyone who left that apartment, including defense counsel. Thus, we find the information provided by the State at the suppression hearing lacking in both quantity and quality. The facts presented to show the particularized and objective basis by the officer for suspecting that defendant was likely engaged in criminal activity were simply insufficient to establish reasonable suspicion.
The state relies on the case of State v. Jernigan, 377 So.2d 1222 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980) for the proposition that despite scant information prompt police action is justified to prevent serious harm when the information supplied by an informant presents an immediate and real danger to the public. In Jernigan the officers received information describing the clothing worn by a black male and stating that the individual was sitting in a specified bar while armed with a handgun. The officers found only one person who fit the description at the specified bar, approached the suspect for questioning and searched him for their safety, finding a weapon. In finding that the search of defendant was justified under the circumstances presented, the court concluded that the information provided to the officers clearly indicated the person accused. The court also concluded that the crime being investigated involved a gun and, therefore, posed an immediate danger to the public, which was aggravated by its occurrence in an occupied bar containing alcoholic beverages.
However, a similar argument to this one was previously rejected by this court where drugs were involved rather than weapons. In State v. Hartzheim, 93-631 *19 (La.App. 5th Cir. 2/23/94), 633 So.2d 768, which is more closely analogous to the instant case than Jernigan, an officer received an anonymous telephone call stating that Jeffrey Hartzheim, a specifically described white male, who resided at a specifically named location, was distributing large amounts of marijuana. The caller also provided a description of the suspect's truck and license number. Officers located the individual who fit the description and observed him leaving the specified location and entering the described truck. Defendant was stopped and the odor of marijuana was detected. This court rejected the Jernigan immediate danger standard, finding no immediate danger presented, and concluded that, absent a showing of reliability of the informant or specificity of detail of the information, the officers lacked reasonable suspicion that defendant had committed, was committing or was about to commit a crime to justify the investigatory stop.
The facts herein are distinguishable from Jernigan, and similar to Hartzheim. Here, as in Hartzheim, there was no information provided which, as in Jernigan, indicated an immediate and real danger to the public justifying prompt police action in the absence of a showing of the informant's reliability or specific detail of criminal activity. Moreover, in Jernigan, unlike here, the person suspected was specifically described.
The case before us is also very similar to a recent Louisiana Supreme Court case, State v. Robertson, 97-2960 (La.10/20/98); 721 So.2d 1268, in which the court granted the defendant's motion to suppress upon finding that the State failed to establish reasonable suspicion for the vehicle stop which lead to the discovery of drugs in the vehicle. In Robertson, a New Orleans police officer testified that he had received a call via the Alcohol, Tobacco and Firearms Hotline in which he was informed that an individual known as Will, who drove a dark green Pontiac Grand Am with very dark tinted windows, was involved in the illegal sale of narcotics within the Magnolia Housing Development. The caller described Will as a black male, very dark complected, short and having the appearance of a juvenile. The caller further stated that the described vehicle would be parked in the 2800 block of Magnolia when Will wasn't dropping off narcotics. The officers went to the 2800 block of Magnolia and located a vehicle matching the description given by the caller. The vehicle pulled out of the driveway and the officers followed it. When the driver stopped a few blocks away and exited the vehicle, the officers observed that he matched the description given. The officers approached the suspect and asked his name. Defendant identified himself as William Robertson. A canine unit arrived and the dog alerted on the vehicle. The officer found cocaine in the vehicle. The court concluded, after looking at the totality of the circumstances, including evidence of the informants veracity, reliability and basis of knowledge, that the information provided was insufficient to establish reasonable suspicion that defendant was engaged in criminal activity.
Similarly, in the instant case, the information was so sparse that it was impossible to determine the veracity, basis of knowledge and reliability of the informant and the information given. Also, the predictive aspect of the information was so vague that it did not rise to the level of reasonable suspicion. Based on the foregoing, we find that the State simply did not meet its burden of proving the validity of the warrantless vehicle seizure. There was no showing made of the reliability of the informant and such limited specificity of the information, that the tip, which was all the officers had, was insufficient to provide the reasonable suspicion necessary to justify the initial stop of the vehicle. Therefore, we must conclude that the trial court erred in denying the motion to suppress the evidence seized as a result of the illegal stop.
We note, as did the Court in State v. Robertson, supra, that the police were not powerless to act on the non predictive information that they received. The officers could have set up more extensive *20 surveillance of the apartment and the people who exited it until they observed suspicious or unusual behavior. If, after corroborating the facts given by the informant, the officers had observed suspicions conduct by the defendant, they would have had reasonable suspicion to make the stop. But, that was not the case here. Rather, in the absence of any suspicious conduct or sufficient information from the informant to evidence the reliability of the information, the officers stopped the vehicle in which defendant was riding without reasonable suspicion of criminal activity on the part of the defendant.
As to the search of the apartment, the affidavit in support of the search warrant is not part of the record. However, as noted above, the state concedes that the validity of the warrant rested on the validity of the initial vehicle stop. Accordingly, since we have held that the stop of the vehicle was improper and the evidence seized pursuant thereto must be suppressed, we are constrained to conclude that the evidence seized from the apartment, a fruit of the illegal stop, must also be suppressed.
Accordingly, for the reasons set forth above, the trial court ruling denying the motion to suppress the evidence seized as a result of the illegal stop of the vehicle, including the evidence seized from the apartment, is reversed. The stay order previously issued by this court is vacated. The case is remanded for further proceedings.

REVERSED; REMANDED AND STAY ORDER VACATED.
CHEHARDY, J., dissents.
CHEHARDY, J., dissenting.
I respectfully dissent from the majority view that the trial court erred in denying defendant's motion to suppress the evidence. The testimony at the hearing from Detective Gerdes, who was only one of several officers from three different agencies (J.P.S.O., D.E.A. and F.B.I.) which were investigating defendant's activities, showed that the officers had sufficient reasonable suspicion, pursuant to Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), to warrant an investigatory stop of defendant's vehicle.
Furthermore, the trial court is vested with great discretion when ruling on a motion to suppress. State v. Williams, 594 So.2d 476 (La.App. 4 Cir.1992). An appellate court should not overturn a trial court's ruling unless the trial judge's conclusions are not supported by the evidence or there exists an internal inconsistency in the testimony of the witnesses or a palpable or obvious abuse of discretion. State v. Shelvin, 98-400 (La.App. 3 Cir.10/7/98), 720 So.2d 124. Additionally, an appellate court's prior decision of admissibility on a pre-trial writ does not absolutely preclude a different decision on appeal. State v. Harris, 97-2269 (La.App. 4 Cir.1/20/99), 727 So.2d 670.
I do not believe that the trial court abused its great discretion in denying defendant's motion to suppress the evidence, and I would therefore deny relator's application for writs.
NOTES
[1] In its response to the writ application the state asserts that "A confidential informant advised Special Agent Garza that on November 20, 1998, between 3:15 p.m. and 4:15 p.m. unidentified individuals would be leaving a specific location (2121 Cleary Avenue, Apt. 10, Metairie, La.) in possession of heroin." Unfortunately, these facts, particularly the specific time frame, were not presented at the hearing on the motion to suppress. If the officer had these facts within his knowledge at the time of the stop, he did not so testify at the suppression hearing. These facts are not in the record.