960 So.2d 1091 (2007)
STATE of Louisiana
v.
Juan J. PARNELL.
No. 07-KA-37.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2007.
*1093 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Martin Belanger, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
The Defendant, Juan J. Parnell, appeals from his convictions on three counts, (1) possession of a firearm by a convicted felon; (2) possession of marijuana, second offense; and (3) possession of an unidentifiable firearm, and his respective sentences of 12 years without benefit of parole, probation, or suspension of sentence and a $1000.00 fine, five years and, as a second offender, eight years without benefits of parole, probation, or suspension of sentence, all ordered to run concurrently. For the reasons which follow, we affirm.
On May 24, 2005, by an amended bill of information,[1] the Jefferson Parish District Attorney's Office charged the Defendant in count one with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1, having previously been convicted in case number 01-1938, 24th J.D.C., Division "B," of possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A), and possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A).[2] He was charged in count two *1094 with possession of marijuana for a second time, based on a previous conviction for possession of marijuana in case number 01-1938, 24th J.D.C., Division "B." And he was charged in count three with possession of an unidentifiable firearm, a violation of La. R.S. 40:1792.
The Defendant was arraigned on this bill of information and pled not guilty. On October 13, 2004, the Defendant filed an omnibus motion, which included a Motion to Suppress Confession, Identification, and Physical Evidence. On June 3, 2005, after a hearing, the trial court denied the motion to suppress the Defendant's statements and the evidence. On March 10, 2006, the Defendant filed a second omnibus motion, which included a Motion to Suppress Confession, Identification, and Physical Evidence.[3] On July 10, 2006, trial commenced.
At the hearing on the motion to suppress and at trial, the following evidence was adduced. Deputy Lance Williams of the Jefferson Parish Sheriff's Office testified that he was on patrol with his partner, Deputy Harold Bourgeois, in the Lincolnshire area in Marrero on August 31, 2004. They were traveling in a champagne-colored Crown Victoria, described as a "police package" and admittedly recognized as an unmarked police vehicle by people in the area. He described the area as "a pretty rough neighborhood" or a high crime area. At approximately 11:30 p.m. Deputy Williams testified that he observed the Defendant from approximately 25 to 30 yards away standing a few feet from the street in the front yard area of a house. Deputy Williams admitted that the Defendant was just standing there when he first observed him. As the vehicle moved closer, the Defendant looked toward them. Deputy Williams stated that the Defendant's eyes opened fully and he "looked like a deer in the headlights." He testified that the Defendant immediately placed his right hand into his right front pants pocket and started backing up the driveway. Deputy Williams stated that he thought the Defendant was acting like he was trying to hide something, possibly narcotics. Deputy Williams stated that he decided to stop and speak to the Defendant. Deputy Williams admitted that at that time he had no reason to believe that the Defendant had committed or was committing a crime.
As Deputy Williams stopped and exited the vehicle in his police uniform, he testified he could smell "burnt marijuana" in the air. Upon exiting, Deputy Williams noticed for the first time another individual who started walking away from the Defendant down the sidewalk. Deputy Williams began to approach the Defendant and Deputy Bourgeois approached the other individual. The Defendant continued to back up the driveway with his right hand in his pocket despite several requests from Deputy Williams to remove it. Deputy Williams' suspicion grew when the Defendant said to him "I'm in front of my house, you can't do nothing." Deputy Williams thought the Defendant was looking around nervously and the Defendant's fist was clenched so tightly in his pocket that the officer could see the tendons in his forearm.
At that time, Deputy Jeffrey Lehrmann drove up to assist. He approached Deputy Williams and the Defendant and they stood on each side of the Defendant in a *1095 "tactical L" position, described as preventing escape. Deputy Williams testified that when the Defendant turned to look at Deputy Lehrmann, changing angles, he could see the outline of the top of a small-frame revolver bulging through the Defendant's pants which were described as baggy shorts. At that point, Deputy Williams stated he was in fear of his safety and the safety of others and immediately grabbed the Defendant's arm, restraining him and shouting the word "gun." A loaded .38 caliber revolver was retrieved from the Defendant's pocket and the Defendant was placed under arrest for carrying a concealed weapon. He was given his Miranda[4] rights. In searching the Defendant incident to this arrest, Deputy Williams found a partially smoked marijuana cigarette in a cigarette pack. Deputy Williams examined the handgun, and found that the serial numbers on the weapon had been obliterated.
Deputy Williams' testimony at trial was essentially the same as that at the motion to suppress hearing except for the additional fact that he could smell the marijuana while still in his vehicle through the open window. Deputy Bourgeois and Deputy Lehrmann corroborated most of Deputy Williams' testimony except that Deputy Bourgeois, pursuing the other person, did not see the handgun in the Defendant's pocket and Deputy Lehrmann did not smell the marijuana nor notice the Defendant's hand or a gun in his pocket.
Kathleen Parnell, the Defendant's mother, testified that she was at her home with the Defendant on the night of August 31, 2004, when she received a telephone call informing her that the police were in her yard. The Defendant had been sleeping and had gone outside no more than five to ten minutes before she received the call. She did not see the Defendant with a gun or marijuana that night. She looked outside and saw the Defendant and one of the three police officers, on the scene, standing by her gray car that was always parked behind the gate. She did not smell marijuana when she went outside and stood beside the Defendant. Ms. Parnell opined that the officers could not have smelled marijuana either, especially since she was cooking two large pots of pears with the windows open in the direction in which the incident took place. Before she went back inside, she saw one officer whispering something into the Defendant's ear and, later, saw the officers laughing to themselves. The other two police officers were in her yard. She did not see the Defendant standing in the street; rather, he was approximately three or four feet from the street. She also did not hear her son say that he was in his yard and, for that reason, the police could not do anything to him.
Twana Polk testified that, on the date of the incident, she lived across the street from the Defendant. That night she had been talking to the Defendant when some men from the neighborhood arrived at her home. She crossed the street to talk to them. One of the men went across the street to talk to the Defendant. She was in her yard when she saw cars coming down the street with many lights. She was surprised to see it was the police playing rap music. The police stopped near the stop sign, which was past the back gate of the yard where the Defendant was standing. One of the officers got out of their vehicle, pointed at the Defendant, and told the Defendant, "Hey, you, come here." Then, according to Polk, the Defendant responded, "What you want? I'm in my yard." The Defendant put his hands up, as if to suggest, "I ain't got to come to you like this." The Defendant did not have his hands in his pockets when the *1096 police approached him, and the Defendant never left his yard during the entire incident. The police went into the Defendant's yard, grabbed the Defendant's arm, twisted it, and slammed the Defendant against a car, in the driveway. Then, while the officer had the Defendant on the car, one of the officers screamed, "He has a gun." She was surprised when the police said the Defendant had a gun, because she had not felt one. According to Polk, the officers then slammed the Defendant against the car three times causing him to scream. She then called the Defendant's mother. Polk claimed that she watched the entire incident from her yard, and she did not smell marijuana. Polk admitted that she was on six months active probation involving a misdemeanor conviction for possession of marijuana.
The trial court denied the Defendant's motion to suppress the evidence. The court noted that the officers were in a high crime area when they saw the Defendant. As the officers were driving up, the Defendant put his hand in his pocket and started to walk away. As the officers got out of the car to investigate, they smelled marijuana. In addition, one of the officers saw the Defendant's hand clenched in a fist leading to the officer's concern that the Defendant had narcotics. One of the officers also saw the outline of a weapon in the Defendant's clothing. The court found that at that time, there was probable cause to arrest and search.
On July 12, 2006, after a two-day trial, the Defendant was found guilty as charged on all counts. On September 2, 2006, the Defendant filed a Motion for Post Verdict Judgment of Acquittal, Arrest of Judgment, and Alternatively Motion for New Trial, which were all denied by the trial court on September 22, 2006. On September 22, 2006, after waiving delays, the Defendant was sentenced on count one to 12 years at hard labor without benefit of parole, probation, or suspension of sentence and a fine of $1000, on count two to five years at hard labor to run concurrent with count one, and on count three to five years at hard labor without benefit of parole, probation, or suspension of sentence to run concurrent with counts one and two. The Defendant received credit for time served.
On the same day, the State filed a multiple bill alleging the Defendant to be a second felony offender. The State sought to enhance only the Defendant's current conviction for possession of an unidentifiable firearm (count 3) based on his previous conviction in case number 01-1938, 24th J.D.C., Division "B," for possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A). The Defendant admitted to the allegations in the multiple offender bill. After the Defendant's original sentence on count 3 was vacated and sentencing delays were waived, the Defendant was sentenced on count 3 to eight years without benefit of parole, probation, or suspension of sentence to run concurrently with the sentences imposed on counts one and two[5]. On September 25, 2006, the Defendant filed a timely motion for appeal, which the trial court granted. On October 2, 2006, the Defendant filed a Motion to Reconsider Sentence. A hearing on the Defendant's motion to reconsider sentence is set for May 4, 2007.[6] The Defendant *1097 takes this timely appeal assigning only one error.
On appeal, the Defendant argues that the trial court erred in failing to grant the defense's motion to suppress the evidence. He argues that the officers lacked reasonable suspicion for a stop and probable cause for an arrest at the time he was "seized." More particularly, he points out that none of the deputies claimed that he was doing anything unusual or suspicious prior to them questioning him. He contends that putting his hand in his pocket, backing up into his yard, and not removing his hand from his pocket when requested to do so are not indications of suspicious activity under the circumstances presented where there was no reasonable suspicion to stop him and he was free to walk away from the officers. The Defendant claims that his obvious decision not to interact with the deputies was prudent, and not indicative of suspicious criminal activity. Furthermore, at the point when the officers "seized" him within the meaning of the Fourth Amendment, when he was no longer free to walk away and an actual stop was eminent because the Defendant's movements were blocked by the "tactical L" positioning of the officers, the officers did not have probable cause for the arrest or seizure. Thus, it is argued, any evidence seized as a result of the unconstitutional stop and seizure should have been suppressed.
The State argues, based upon the testimony presented at the suppression hearing and at trial, the trial court did not err in denying the motion to suppress. The State claims that, at the suppression hearing, it was able to show through the testimony of Deputy Williams and Deputy Bourgeois that there was reasonable suspicion for the officers to institute an investigatory stop, which led to probable cause to arrest the Defendant for carrying a concealed weapon, and, subsequently, to search him incident to arrest, revealing that the Defendant possessed marijuana. The State contends that, based on the aforementioned testimony, the high incidence of crime in the area, the Defendant's reaction to the police, the smell of marijuana, the Defendant's suspicious behavior in putting his hands in his pockets, and the police officers' observation of the outline of a gun, there was amble probable cause for the arrest.
It is well settled that when the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving the admissibility of any evidence seized. La.C.Cr.P. art. 703(D); State v. Warren, 05-2248 (La.2/22/07), 949 So.2d 1215; State v. Brown, 04-882, p. 4 (La.App. 5th Cir.12/14/04), 892 So.2d 45, 48, writ denied, 05-1274 (La.4/28/06), 927 So.2d 278. The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during or as a direct result of an unlawful invasion. Wong Sun v. U.S., 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963).
The Fourth Amendment to the United States Constitution and the Louisiana Constitution article I § 5 protects individuals from unreasonable searches and seizures. State v. Liles, 01-573, p. 4 (La.App. 5th Cir.11/27/01), 803 So.2d 125, 129. Although a seizure occurs for Fourth Amendment purposes either when an individual has been subjected to physical restraint or when he submits to the assertion of official authority, California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991), no bright-line rule exists for distinguishing between investigatory stops, characterized by brief restraint imposed on a lesser showing of reasonable suspicion, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and arrests based on probable cause. Inherent *1098 in an officer's right to make an investigatory stop of an individual and to demand his name, address, and explanation of his actions is the right to detain the subject temporarily to verify information given or to obtain information independently of his cooperation. State v. Broussard, 00-3230, p. 3 (La.5/24/02), 816 So.2d 1284, 1286. The use of actual restraint does not alone transform a street encounter between the police and a citizen into an arrest because an investigatory stop necessarily "involves an element of force or duress, temporary restraint of a person's freedom to walk away." State v. Salazar, 389 So.2d 1295, 1298 (La.1980); see 4 Wayne R. LaFave, Search and Seizure, § 9.2(d), p. 35 (3rd ed. 1996) ("A stopping for investigation is not a lesser intrusion, as compared to arrest, because the restriction on movement is incomplete, but rather because it is brief when compared with arrest. . . ."). See also Terry v. Ohio, 392 U.S. 1 at 21, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("Obviously, not all personal [encounters] between policemen and citizens involve[] `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred."). State v. Broussard, 00-3230 at 3, 816 So.2d at 1286-7.
Law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. State v. Liles, 01-0573, p. 4 (La. App. 5th Cir.11/27/01), 803 So.2d 125, 129. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is something less than probable cause to arrest, and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. State v. Liles, 01-0573 at 4, 803 So.2d at 129. "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." La.C.Cr.P. art. 215.1; State v. Sims, 02-2208 (La.6/27/03), 851 So.2d 1039, 1043. "[T]he threshold of one's dwelling . . . as is the yard surrounding the house," are public places under the cases interpreting the Fourth Amendment. U.S. v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976).
An area with the reputation of having "high crime" is an articulable fact upon which the police may rely and is relevant in the determination of whether there is reasonable cause to conduct an investigatory stop. State v. Barney, 708 So.2d at 1207. Flight, nervousness, or a startled look at the sight of a police officer are insufficient alone to justify an investigatory stop by itself. State v. Massey, 03-1166, p. 5 (La.App. 5th Cir. 1/27/04), 866 So.2d 965, 968. However, these types of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion. Id. In addition, a police officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence of crimes, are factors that may support a finding of reasonable suspicion for an investigatory stop. State v. Massey, 866 So.2d at 969.
A determination regarding the credibility of witnesses at the suppression hearing is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and such credibility determinations will not be reweighed on appeal. State v. Enclade, 03-353, p. 5 (La.App. 5th Cir.9/16/03), 858 So.2d 8, 13. A trial court's denial of a motion to suppress is *1099 afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Gagnon, 01-1302, p. 5 (La.App. 5th Cir.4/10/02), 817 So.2d 167, 171.
In the present case, Deputy Williams testified that he and his partner Deputy Bourgeois were patrolling in Lincolnshire, a high crime area where he had made numerous narcotic arrests. They first observed the Defendant standing by the street. According to Deputy Williams, he became suspicious when the Defendant recognized their unmarked vehicle, as a Jefferson Parish Street Crimes Unit vehicle, and seemed startled. When the Defendant made eye contact, he jammed his right hand into his front pants pocket and immediately began to back up into the driveway. This behavior, coupled with his years of experience, led Deputy Williams to believe that the Defendant was trying to hide something or might have narcotics.
Deputy Williams stopped his car near where the Defendant was standing. As Deputy Williams got out of the vehicle, he immediately smelled marijuana. Another man who had been standing near the Defendant started walking away. Deputy Williams started to walk toward the Defendant and the Defendant told Deputy Williams that he could not do anything to him because he was in his driveway. The Defendant refused on several occasions to take his hand out of his pocket despite Deputy Williams' request that he do so.
When Deputy Williams first stopped, he just wanted to ask the Defendant some questions. However, we find that what started as a hunch ripened into reasonable suspicion for an investigatory stop and a Terry pat down, with the smell of marijuana, the startled look, and the immediate insertion of his hand in his pocket with a clenched fist and his refusal to remove it after numerous requests, along with his backing up the driveway and pronouncement that he could not be questioned because he was in his yard. As Deputy Lehrmann approached and the Defendant turned, changing his angle, Deputy Williams saw the outline of the top strap and front site of a .38 caliber revolver through the Defendant's pants. He immediately restrained the Defendant, having cause to conduct a Terry pat down search for weapons for the protection of himself and others, as well as probable cause for arrest.
After the gun was removed, the Defendant was placed under arrest and given his Miranda rights. In a search of the Defendant incident to his arrest, the marijuana was found. Based on the foregoing, we find Deputy Williams had reasonable suspicion to question the Defendant as he followed the Defendant up the driveway, and, upon seeing the outline of the weapon through the Defendant's pants, probable cause to arrest him. Therefore, we find no error in the trial court ruling denying the Defendant's motion to suppress.
ERROR PATENT DISCUSSION
The defendant has requested an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990) regardless of whether the Defendant makes such a request. The review reveals the following matters.
First, the record reveals that the trial court did not rule on the Defendant's timely filed motion to reconsider sentence. The motion for appeal was granted, on September 27, 2006, before the motion to reconsider sentence was filed, on October 2, 2006. The jurisdiction of the trial court was divested. La.C.Cr.P. art. 916. However, even though the jurisdiction of the appellate court has attached, the trial court can still "[c]orrect an illegal sentence *1100 or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence." La.C.Cr.P. art. 916(3). "If a motion is made or filed [in a felony case], the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence." La.C.Cr.P. art. 881.1(C). However, "[i]f necessary to an appropriate disposition of a motion to reconsider sentence, the appellate court may remand the case to the trial court with instructions to supplement the record or to hold an evidentiary hearing," pursuant to La.C.Cr.P. art. 881.4(C).
In State v. Winfrey, 97-427, (La.App. 5th Cir.10/28/97), 703 So.2d 63, writ denied, 98-264 (La.6/19/98), 719 So.2d 481, the defendant appealed his armed robbery conviction, his second felony offender status, and his sentence, assigning 13 errors including the denial of his motion to suppress identification and the excessiveness of his sentence. State v. Winfrey, 703 So.2d at 66-68. This Court addressed all of the assigned errors on the merits including the motion to suppress, but declined to address the error on excessiveness of sentence because the record did not reflect a ruling on the defendant's motion for reconsideration. State v. Winfrey, 703 So.2d at 68-80. This Court reasoned that rather than acting on the defendant's assigned error on the excessiveness of his sentence, while the defendant's motion for reconsideration was pending and might vacate his present sentence, it would remand the case for a ruling on the motion and order supplementation of the record with the results. State v. Winfrey, 703 So.2d at 81.
In the present case, like State v. Winfrey, supra, the Defendant assigns as error the trial court's denial of his motion to suppress. However, unlike the defendant in State v. Winfrey, the Defendant has not raised any errors regarding his sentence, i.e. excessiveness of sentence. Therefore, we find that the Defendant's pending motion to reconsider sentence in no way affects our ability to consider this appeal, only raising as error the trial court's denial of his motion to suppress.
Second, the record reveals that the original commitment/minute entry and the original sentencing transcript are inconsistent. The original commitment/minute entry has a clerical error indicating that the Defendant was informed of his Boykin[7] rights. However, the Defendant was convicted in a jury trial. Therefore, upon remand, the trial court is ordered to correct the original commitment/minute entry to reflect that the Defendant was not informed of his Boykin rights upon entering a guilty plea, but rather was convicted in a jury trial. See, State v. Quest, 00-205, p. 10 (La.App. 5th Cir.10/18/00), 772 So.2d 772, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866, in which this Court found that even though clerical errors in the commitment that do not cause prejudice to a defendant's rights do not merit reversal, the errors should be amended. State v. Quest, 772 So.2d at 788.
In addition, the transcript of the Defendant's original sentencing, as well as that of habitual offender commitment and sentencing, indicate that the Defendant was sentenced to five years on count two without any restrictions. However, the original commitment/minute entry suggests that the sentence on count two was imposed with restrictions, because of the restrictions imposed on the Defendant's entire sentence. Therefore, upon remand, we order the trial court to correct the original commitment/minute entry to reflect that the sentence imposed on count two was imposed without restrictions.
*1101 Third, the record reveals that the Defendant did not receive a complete advisement of his post-conviction rights as provided by La.C.Cr.P. art. 930.8. After his original sentencing, the trial judge informed the Defendant that he had "two years from the date of judgment of conviction [became] final to seek post-conviction relief." The original commitment/minute entry does not indicate that the Defendant received any notification of his post-conviction rights. In addition, the record reveals that the Defendant did not receive a second notification of his post-conviction rights at his multiple bill sentencing.
La.C.Cr.P. art. 930.8 states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Therefore, the Defendant received an incomplete advisement of his rights. State v. Tran, 05-518, p. 8 (La.App. 5th Cir.12/27/05), 919 So.2d 787, 795. Therefore, we remand the case to the trial court and order the court to inform the Defendant of the appropriate prescriptive period for filing for post-conviction relief by sending appropriate written notice to the Defendant within ten days of the rendition of this Court's opinion and by filing written proof in the record that the Defendant received the notice. State v. Evans, 01-1148, p. 3 (La.App. 5th Cir.2/26/02), 811 So.2d 994, 996.
Accordingly, for the reasons stated above, the Defendant's convictions for possession of a firearm by a convicted felon, possession of marijuana, second offense, and possession of an unidentifiable firearm, and his respective sentences of 12 years without benefit of parole, probation, and suspension of sentence and a $100.00 fine, five years and, as a second offender, eight years without benefit of parole, probation, or suspension of sentence, all ordered to run concurrently, are affirmed. The case is remanded for the trial court to amend the commitments as ordered and to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8 of the prescriptive period for post conviction relief.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED.
NOTES
[1] The original bill of information and an amendment to it had been previously filed but are not relevant to any issues before this Court on appeal.
[2] On the first day of trial, the Defendant stipulated to these two prior convictions.
[3] The record indicates that the trial court did not rule on the Defendant's second pre-trial motion to suppress but we note it was almost identical to the first and he waived his right to a ruling by proceeding to trial without objection and informing the court that there were no outstanding motions. State v. Fletcher, 02-707, p. 3 (La.App. 5th Cir.12/30/02), 836 So.2d 557, 559.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] In the multiple bill sentencing transcript, the trial court states "[the defendant's multiple bill sentence] will run concurrently with what I'm giving you in count one and concurrently with what I'm giving you in count three." Since it is impossible for the multiple bill sentence to run concurrently with the original sentence in count three that was vacated, it appears that the trial court meant that the multiple bill sentence should run concurrently with the sentences imposed on counts one and two.
[6] See error patent discussion.
[7] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).