FREDERICKA HOMBERG WICKER, Judge.
 

 12This is a criminal proceeding in which the defendant/appellant Undra Holmes appeals his conviction and sentence for possession of cocaine with intent to distribute. We affirm the conviction and sentence.
 

 PROCEDURAL HISTORY AND RELEVANT FACTS
 

 On March 21, 2006, the defendant was charged by bill of information with one count of possession of cocaine with intent to distribute, a violation of La. R.S. 40:967(A). At arraignment, the defendant pleaded not guilty. He filed several motions on March 28, 2006, including a motion to suppress the evidence found in his vehicle on July 11, 2005.
 

 The hearing on the motion to suppress was held on February 12 and 13, 2007.
 
 *277
 
 The first witness called by the state was Terry Wilson, a sergeant in the New Orleans Police Department. Sergeant Wilson testified that on July 11, 2005, he received a tip from a reliable confidential informant. Officer Wilson told the court that he had used the confidential informant to arrest other narcotics dealers |ssince 1989. According to the informant, a man named Undra Holmes would be transporting a large amount of cocaine into Orleans Parish. He provided Sergeant Wilson with a description of a car that would be transporting the cocaine and indicated that the transporter kept a large amount of drugs at his residence. According to the informant, the car was a gold Chrysler Concorde and was located at Moe’s Auto Repair on North Galvez Street in New Orleans. Sergeant Wilson considered the information to be credible and proceeded to Moe’s Auto Repair. When he arrived, he found a gold-four door Chrysler LHS sedan parked on the street.
 
 [1]
 
 After conducting approximately one to one and a half hours of surveillance on the car while it was unoccupied, Sergeant Wilson observed the defendant enter the vehicle and drive away. Sergeant Wilson stopped the car after the occupant had driven approximately two blocks, though he admitted that the occupant had not committed any traffic offenses. The defendant identified himself as Undra Holmes, and was ordered to exit the vehicle. Sergeant Wilson called for a narcotics dog at the scene. The narcotics dog made an indication in the area of the car’s radio, which Sergeant Wilson noted was loose. Sergeant Wilson pulled out the radio and discovered a rag inside the well that contained approximately thirty-three grams of crack cocaine. At that time, the defendant was placed under arrest.
 
 [2]
 
 The car also contained a bill from the
 
 New Orleans Times-Picayune
 
 with the defendant’s name and an address on nearby Bartholomew Street in New Orleans. Sergeant Wilson proceeded to this address and the defendant’s mother opened the door. The defendant’s mother provided Wilson with an address in Me-tairie where she claimed the defendant resided with his girlfriend.
 

 | ¿Lieutenant Robert Gerdes of the Jefferson Parish Sheriff’s Office was next to testify. Lieutenant Gerdes told the court that he had received a call from Sergeant Wilson informing him of the defendant’s arrest in Orleans Parish and that his mother had provided the police with his residential address in Metairie. Gerdes then contacted Detective David Angelica and Detective Brandon Boylin, who made their way to the address the defendant’s mother had provided. Angelica knocked on the door and two women appeared, later identified as Stephanie Thomas and Kiana Chapman. Both Thomas and Chapman signed a consent form allowing police to search the residence. Detectives Angelica and Boylin recovered approximately fifty grams of crack cocaine from a pair of men’s jeans located in the bedroom the defendant shared with one of the tenants. They also recovered a digital scale from the bedroom closet, brown paper bags with cut corners, plastic packaging, and paperwork with the defendant’s name that coincided with the Metairie address.
 

 The defendant testified on his own behalf. He told the court that his vehicle was parked on North Galvez Street near
 
 *278
 
 Moe’s Auto Repair on July 11, 2005. The vehicle was being repaired by Moe’s and had been at that location for approximately one month. Shortly after the defendant left the auto repair shop, he was stopped by several police cars on Conti Street. He was forced out of the vehicle by police officers, handcuffed, and made to stand on the sidewalk. The defendant told the court that it took approximately thirty to forty minutes for the canine unit to arrive. He did not see the canine unit make an indication but was arrested, read his
 
 Miranda
 
 rights, and placed in the rear seat of a police car shortly after the dog began searching the vehicle. On cross examination, the defendant admitted that he had moved from Bartholomew St. to Gibson St. about three weeks before the arrest. When the defendant was asked about the car from which the |snarcotics had been recovered, he stated that it was a gold Chrysler LHS, not a gold Chrysler Concorde.
 

 The court denied the defendant’s motion to suppress on May 1, 2008. Trial in this matter was held on the same day. The testimony at trial was essentially the same as the testimony elicited at the motion to suppress. The defendant was found guilty as charged by a twelve person jury. On July 7, 2008, the defendant’s motion for a new trial was denied and the trial court sentenced him to 20 years imprisonment at hard labor, with the first two years to be served without benefit of parole, probation, or sentence. This timely appeal followed.
 

 The defendant assigns a single error to the proceedings below, namely, that the trial court erred in denying his motion to suppress the evidence. He makes two distinct arguments in support of the assignment. First, the defendant claims that the tip from the confidential informant did not provide Sergeant Wilson the requisite reasonable suspicion to conduct an investigatory stop under
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Second, he argues that even if Sergeant Wilson had the requisite suspicion to conduct a
 
 Terry
 
 stop, the evidence should have been suppressed because the defendant’s continued detention constituted an illegal seizure.
 

 Investigatory Stops
 

 As aforementioned, the defendant disputes whether the information provided by the confidential informant wás sufficient to generate reasonable suspicion for the investigatory stop conducted by police. The defendant argues that the information was insufficient and, therefore, that the evidence against him should have been suppressed.
 

 The Fourth Amendment to the United States Constitution protects “[t]he right of the people to be secure in their persons, houses, papers, and effects, against | ^unreasonable searches and seizures.” U.S. Const, amend. IV. Similarly, the Louisiana Constitution provides that “[ejvery person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const, art. 1, § 5. As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment’s warrant exceptions.
 
 See, e.g., State v. Freeman,
 
 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634. The state has the burden of showing that one of the exceptions applies.
 
 See, e.g., State v. McHugh,
 
 92-1852 (La.1/6/94), 630 So.2d 1259, 1262. We review a trial courts ruling on a motion to suppress under the manifest error standard.
 
 State v. Williams,
 
 08-272, p. 3 (La.App. 5 Cir.
 
 *279
 
 12/16/08), 3 So.3d 526;
 
 State v. Higgins,
 
 03-1980, p. 20-21 (La.4/1/05), 898 So.2d 1219, 1233, cert.
 
 denied,
 
 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
 

 Police officers are permitted to conduct warrantless “investigatory stops” upon a person reasonably suspected of criminal activity.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The test for “reasonable suspicion” is whether the police officer had sufficient knowledge of the facts and circumstances to justify an infringement upon the individual’s right to be free from governmental interference.
 
 See, e.g., State v. Melancon,
 
 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 228,
 
 writ denied,
 
 03-3505 (La.4/23/04), 870 So.2d 297. If the police officer did not have reasonable suspicion to conduct the investigatory stop, the stop is illegal and the evidence seized from it must be suppressed.
 
 Id.
 
 at 229;
 
 Brown v. Illinois,
 
 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
 

 | /Tips provided to police by confidential informants can supply sufficient reasonable suspicion to conduct an investigative stop under certain circumstances. The tip must accurately predict the offender’s conduct in sufficient detail to support a finding that the informant had reliable information regarding the illegal activity.
 
 See, e.g., Id.
 
 The tip must also be corroborated by the police.
 
 Alabama v. White,
 
 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If an informer’s tip accurately predicts the offender’s future behavior it gains an additional modicum of reliability.
 
 Id.
 
 Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect.
 
 See, e.g., State v. Francois,
 
 04-1147, p. 7 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010. An informant’s past record for accuracy and reliability is another factor taken into account when determining the reliability of the tip in question.
 
 State v. Austin,
 
 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879,
 
 writ denied,
 
 05-0830 (La.11/28/05), 916 So.2d 143.
 

 The Louisiana Supreme Court has noted:
 

 While probable cause must be determined on the totality of the circumstances, an informant’s reliability, veracity and basis of knowledge are “all highly relevant.”
 
 Illinois v. Gates,
 
 462 U.S. 213[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983);
 
 State v. Ruffin,
 
 448 So.2d 1274, 1278 (La.1984). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant’s knowledge and the informant’s reliability, when examined under the totality of the circumstances, are established.
 

 State v. Fisher,
 
 97-K-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184.
 

 With these principles in mind, this Court concludes that the police officers had the requisite reasonable suspicion to conduct an investigative stop. In making this determination, we look to two Louisiana cases and one United States Supreme Court case with factual situations similar to the instant case.
 

 |RIn
 
 State v. Anthony,
 
 07-204 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219, a reliable confidential informant informed police that a man nicknamed “Twin” would be delivering crack cocaine to the Oasis Motel located at 70 Westbank Expressway in Gretna. The informant stated that Twin would be driving a newer-model, black Pontiac Grand Prix with chrome rims.
 
 Anthony,
 
 971 So.2d at 1223. The police set up surveillance at the Oasis Motel using several
 
 *280
 
 unmarked vehicles. Approximately twenty to thirty minutes after the call, police observed a black Grand Prix with three occupants enter the Oasis Motel parking lot.
 
 Id.
 
 Several police officers approached the vehicle with guns drawn, and one saw a passenger throw a white object into the back seat of the Grand Prix.
 
 Id.
 
 All three men were detained and later arrested when cocaine and heroin were discovered in the car.
 
 Id.
 
 at 1223-24. The defendants argued that the trial court erred in denying their motions to suppress because the police did not corroborate the information supplied by the confidential informant before they converged on their vehicle, but this Court disagreed. We concluded that there was “no error in the trial court’s denial of defendants’ motions to suppress. The police corroboration of the confidential informant’s tip gave them reasonable suspicion to justify the stop.”
 
 Id.
 
 at 1227.
 

 In
 
 State v. Rodriguez,
 
 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, police found contraband in a vehicle after an investigatory stop arising out of a reliable confidential informer’s tip. The tipster informed police that a particular apartment was “involved in wholesale distribution and storage of heroin” and that a resident of the department would be arriving with a large shipment of heroin.
 
 Rodriguez,
 
 761 So.2d at 15-16. The informant did not mention the resident’s name, nor did he indicate what type of vehicle the resident would be driving.
 
 Id.
 
 at 16. After conducting surveillance on the apartment complex, the police observed two men |9exit the apartment pointed out by the informant and enter a vehicle.
 
 Id.
 
 The two men were not acting suspiciously when they exited the apartment. Put differently, “[t]he only factor causing [the police] to be suspicious of these individuals was that they left that apartment [indicated by the informant].”
 
 Id.
 
 The police activated their lights and siren and pulled the two men over. The driver immediately fled the scene and managed to escape. The defendant, who was riding as a passenger, attempted to flee and throw away a black bag. However, he was apprehended and placed under arrest after brown powder in the bag tested positive for heroin.
 
 Id.
 
 The trial court denied the defendant’s motion to suppress the heroin, but this Court reversed, with one judge dissenting. We noted that:
 

 [T]he information was so sparse that it was impossible to determine the veracity, basis of knowledge and reliability of the informant and the information given. Also, the predictive aspect of the information was so vague that it did not rise to the level of reasonable suspicion.
 

 Id.
 
 at 19.
 

 In
 
 Alabama v. White,
 
 496 U.S. 825, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), an anonymous tipster informed police that a woman named “Vanessa White” would be leaving a particular apartment in a brown Plymouth station wagon with a broken taillight, that she would be going to a local motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case.
 
 White,
 
 496 U.S. at 327, 110 S.Ct. 2412. The officers decided that the tip was credible and proceeded to the spot that the informant had mentioned.
 
 Id.
 
 The
 
 White
 
 defendant then exited the apartment noted by the informant, entered the brown Plymouth station wagon with a broken taillight, and began to drive off. She was stopped near the motel and gave officers consent to search her car. The police offers discovered a brown attaché case in the defendant’s trunk, which contained a large amount of marijuana. A small amount of cocaine was later recovered from the defendant’s |10purse.
 
 Id.
 
 The defendant’s guilty plea was reversed by the Court of Criminal Appeals of Alabama on the basis that the officers did not
 
 *281
 
 have the reasonable suspicion necessary under
 
 Terry
 
 to justify the investigatory stop of respondent’s car, but the United States Supreme Court reversed. Writing for the majority, Justice White admitted that “[i]t is true that not every detail mentioned by the tipster was verified, such as the name of the woman leaving the building or the precise apartment from which she left; but the officers did corroborate that a woman left the [defendant’s apartment] building and got into the particular vehicle that was described by the caller.” He concluded:
 

 Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent’s car.
 

 Id.
 
 at 332, 110 S.Ct. 2412
 

 With these principles in mind, we cannot conclude that the trial court committed manifest error in holding that Sergeant Wilson had reasonable suspicion to stop the defendant’s vehicle. We believe, as the United States Supreme Court did in
 
 White,
 
 that the instant appeal presents a “close case.” There are several factors weighing in favor of admissibility. For example, the informant in the instant case had proven reliable over a period of nearly twenty years and had helped police make many cases. The police were able to corroborate the defendant’s name, physical description, and vehicle from the informant’s confidential tip. In addition, the informant accurately advised the police where the vehicle would be located. On the other hand, the police showed no particularized or objective basis for suspecting that the defendant was engaged in criminal activity. The state presented no evidence to show that the defendant was committing, had committed, or was about to commit an offense. Most importantly, I nand contrary to the state’s assertion otherwise, it is pellucidly clear that the tip provided absolutely no predictive information.
 

 It is also true that the confidential informant’s tip did not provide every pertinent detail, as was the case in
 
 White.
 
 For example, the informant omitted mention where the defendant resided, where in the vehicle the cocaine would be located, and what quantity of cocaine would be found. As the United States Supreme Court noted, a failure to provide every detail is not a fatal error, but it is significant.
 

 Given the circumstances and the police corroboration of the informant’s tip, Sergeant Wilson had the requisite reasonable suspicion to stop the defendant’s vehicle. Thus, the trial court did not err in denying the defendant’s motion to suppress on the basis that the informant’s tip did not provide enough reasonable suspicion to conduct an investigatory stop.
 

 Canine “Sniff” Searches
 

 A canine “sniff’ is not a search and officers do not need reasonable suspicion to conduct a dog “sniff’ search.
 
 State v. Joseph,
 
 02-717 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1053;
 
 United States v. Place,
 
 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Once probable cause for the search of a vehicle exists, a police officer has the authority to search those places in the vehicle in which there is probable cause to believe the object searched for may be found.
 
 See, e.g., California v. Acevedo,
 
 500 U.S. 565, 570, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).
 

 In the instant case, the narcotics dog was called to the scene and made an indication in the area of the Chrysler’s radio. Therefore, there was probable cause to search in the proximity of the radio, and the trial court did not commit manifest 112error in denying the defendant’s motion
 
 *282
 
 to suppress for lack of probable cause to search the radio well.
 

 Unlawful Seizure
 

 The defendant also contends that his continued detention and questioning without an arrest warrant constituted an unconstitutional seizure, and that all evidence seized subsequently should therefore be suppressed. We disagree.
 

 A “seizure” for Fourth Amendment purposes occurs when an individual submits to the assertion of state authority or is physically restrained.
 
 See, e.g., California v. Hodari D.,
 
 499 U.S. 621, 626, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991);
 
 State v. Parnell,
 
 07-37, p. 10 (La.App. 5 Cir. 5/15/07), 960 So.2d 1091, 1097,
 
 writ denied,
 
 07-1417 (La.1/7/08), 973 So.2d 733. Not every investigatory stop is considered a seizure under the Fourth Amendment.
 
 Parnell,
 
 960 So.2d at 1098. Rather, a seizure only occurs when the police restrain the liberty of an individual by means of physical force or show of authority.
 
 Id.
 
 The use of actual restraint does not alone transform a street encounter between the police and a citizen into an arrest, because an investigatory stop necessarily “involves an element of force or duress, temporary restraint of a person’s freedom to walk away.”
 
 Id.
 
 (citing
 
 State v. Salazar,
 
 389 So.2d 1295, 1298 (La.1980)).
 

 In
 
 United States v. Sharpe,
 
 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the United States Supreme Court recognized that a stop that continues indefinitely will at some point no longer be justified as an investigatory stop and morphs into a Fourth Amendment seizure. In determining whether a detention is too lengthy to be considered an investigatory stop, the courts must examine “whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.”
 
 Sharpe,
 
 470 U.S. at 686, 105 S.Ct. at 1575. | isThere is no bright line test for determining when an encounter between a citizen and a police officer exceeds the bounds of a
 
 Temj
 
 stop and becomes a seizure.
 
 State v. Miller,
 
 00-1657 (La.10/26/01), 798 So.2d 947, 949 (per curiam).
 

 In
 
 State v. Gant,
 
 93-2895 (La.5/20/94), 637 So.2d 396 (per curiam), officers made an investigatory stop of the defendant’s vehicle and “pursued a means of investigation likely to confirm or dispel their suspicions quickly by summoning to the scene a drug-certified dog” after receiving detailed information from an informant and conducting surveillance.
 
 Id.
 
 at 397. The dog arrived “within half an hour of the stop.”
 
 Id.
 
 Once the dog alerted on the vehicle’s trunk, the officers had probable cause to search the vehicle, and the warrant requirement was excused due to exigent circumstances arising from the stop of a vehicle on the open road.
 
 Id.
 

 We find, as the Louisiana Supreme Court did in
 
 Gant,
 
 that the defendant’s relatively short period of detention was reasonable to confirm or dispel police suspicions. Sergeant Wilson testified that he explained to the defendant that he was not under arrest and that he would be released if the narcotics dogs did not react. Importantly, Wilson did not read the defendant his
 
 Miranda
 
 rights, but did pat him down for officer safety and inform him that he was under investigation. A canine unit was then called to the scene. Sergeant Wilson testified that approximately fifteen minutes elapsed before the narcotics dog arrived at the scene and made a perimeter search of the vehicle. The stop in the instant case was shorter than the stops in
 
 Gant
 
 and
 
 Miller,
 
 both of which were held to be reasonable. Given the totality of the circumstances, the defendant’s continued detention and questioning without an ar
 
 *283
 
 rest warrant'did not constitute an unconstitutional seizure. Once the dog made an indication in the area of the radio, officers had probable cause to fully search the vehicle.
 

 Accordingly, the assignment of error has no merit.
 

 [14ERROR PATENT REVIEW
 

 The record was reviewed for errors patent. La. C. Cr. P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The following errors were found.
 

 The trial court failed to notify the defendant of the proper two year prescriptive period for filing post conviction relief at sentencing pursuant to La. C. Cr. P. art. 930.8. The sentencing transcript indicates that the trial court informed the defendant that he had “two (2) years from the day of sentence should become final to seek post conviction relief.” La. C. Cr. P. art. 930.8(A) provides that no application for post conviction relief “shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final.” This Court has held on several occasions that the failure to advise a defendant that the prescriptive period runs from the time his conviction
 
 and sentence
 
 become final renders the advisement incomplete.
 
 See, e.g., State v. Lauff,
 
 06-717 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 821. In the past, this Court has ordered the trial court to properly advise the defendant of the prescriptive period under La. C. Cr. P. art. 930.8 by written notice within ten days of the rendition of this court’s opinion and then to file written proof in the record that the defendant received the notice. However, in
 
 State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451 (citing
 
 State v. Morris,
 
 40,322, pp. 4-5 (La.App. 2 Cir. 1/25/06), 920 So.2d 359, 363), we corrected this error patent by way of our opinion rather than a remand. We therefore advise the defendant by this opinion that no application for post-conviction relief, including an application which seeks an out of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 and 922.
 

 | isThe defendant was not arraigned on the amended bill of information. .However, this error requires no corrective action; La. C. Cr. P. art. 555 provides that a failure to arraign the defendant is waived if the defendant enters upon the trial without objection thereto.
 
 See also State v. Hidalgo,
 
 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188. In this case, the defendant did not object prior to trial, thus, the error was waived.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s conviction and sentence is affirmed.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . The Chrysler LHS and Chrysler Concorde are both full-size four door sedans.
 

 [2]
 

 . The thirty-three grams of cocaine was placed in the Central Evidence and Property Room in the basement of the New Orleans Police Department, but was lost in the flooding that followed Hurricane Katrina. The defendant was not charged with an offense resulting from this initial traffic stop.