# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-610

STATE OF LOUISIANA

VERSUS

BRANDON DALE ALLEN

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 300,821
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**CONVICTIONS FOR POSSESSION OF COCAINE AND POSSESSION OF HYDROCODONE AFFIRMED.**

**CONVICTION FOR POSSESSION OF A FIREARM BY A CONVICTED FELON REVERSED, ORDER OF ACQUITTAL ENTERED, AND SENTENCE VACATED. REMANDED WITH INSTRUCTIONS.**

James C. Downs
District Attorney - 9th Judicial District Court
John T. Giordano
Assistant District Attorney – 9th Judicial District Court
701 Murray Street
Alexandria, LA 71301
Telephone: (318) 473-6650
COUNSEL FOR:
      Plaintiff/Appellee - State of Louisiana

**Dmitrc Ian Burnes**
**Burnes & Burnes**
**711 Washington Street**
**Alexandria, LA 71301**
**Telephone:  (318) 448-0482**
**COUNSEL FOR:**
    **Defendant/Appellant - Brandon Dale Allen**

**THIBODEAUX, Chief Judge.**

Defendant, Brandon Dale Allen, appeals jury verdicts convicting him of possession of cocaine, possession of hydrocodone, and possession of a firearm by a felon. The court sentenced him to five years on the two drug possession convictions and ten years on the possession of a firearm by a convicted felon, all to be served concurrently. The State then filed a habitual offender bill seeking to enhance the drug convictions. After a hearing, the trial court sentenced Defendant to concurrent ten year sentences on each of the drug convictions, and ten years on the firearm conviction, to be served consecutively to the two ten year terms, for a total of twenty years imprisonment.

Defendant also appeals the denial of his motion to suppress.

For the following reasons, we affirm the two drug possession convictions and the denial of the motion to suppress. We reverse the conviction for possession of a firearm by a convicted felon because of insufficient evidence to convict. We remand for resentencing.

## FACTS

On the afternoon of February 2, 2010, Corporal Glenn Hall, a patrol officer with the Alexandria Police Department, pulled Defendant's car over at the request of Detective Latisha Gaudin, an officer in the narcotic division of the Alexandria Police Department. Detective Gaudin had been tailing Defendant's vehicle in an unmarked police car. Defendant, a passenger, Troy Newton, and Defendant's six-year-old son were in the car. Defendant's vehicle was searched, and a small amount of cocaine was located under the driver's seat and a loaded handgun was found under the backseat of the vehicle. After Defendant was transported to police headquarters, a plastic bag was found in the backseat of the patrol car

containing several hydrocodone pills, marijuana, and two small packets of cocaine. Upon obtaining a search warrant for Defendant's residence, the police found a Styrofoam cup in the refrigerator which contained more hydrocodone pills and two more small packets of cocaine. Defendant was arrested and charged with possession with intent to distribute cocaine and hydrocodone and with possession of a firearm by a convicted felon.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. There is one error patent concerning the bill of information and several errors patent concerning Defendant's sentences.

### (1) Failure to Vacate Original Sentences

The record indicates the court failed to vacate Defendant's original sentences on his two drug offenses. For each of his convictions of possession of cocaine and possession of hydrocodone, Defendant was originally sentenced to serve five years to run concurrently. Defendant was subsequently adjudicated a third felony offender and was sentenced to serve ten years on each count to run concurrently with each other, but consecutively to any other time, including the ten-year sentence for possession of a firearm by a convicted felon. Neither the court minutes nor the sentencing transcript indicate the trial court vacated the two originally-imposed sentences when it imposed the two habitual offender sentences as required by La.R.S. 15:529.1(D)(3).

This issue was before this court as an error patent in *State v. Pitre*, 04-1134, pp. 4-5 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009, 1012:

> Additionally, the court notes that the minutes of the habitual offender adjudication do not indicate the trial court vacated the originally imposed sentences of seven years on each count before imposing the habitual offender sentences. Louisiana Revised Statutes

2

15:529.1(D)(3) requires the trial court to vacate the previously imposed sentence prior to imposing a habitual offender sentence. In *State v. Mayer*, 99-3124 (La. 3/31/00), 760 So.2d 309, however, the supreme court found that vacation of the habitual offender sentence was not necessary where the transcript failed to reflect the trial court vacated the previously imposed sentence before imposing the habitual offender sentence. The supreme court reasoned that the substantial rights of the defendant were protected since the commitment/minute entry "reflect[ed] that the trial judge vacated the defendant's original sentence and thereby eliminated any possible confusion as to the terms of the defendant's confinement. . . ." *Id*. at 310.

The present case is distinguishable since the minute entry does not indicate that the trial court vacated the originally imposed sentences before sentencing the Defendant as a habitual offender. To eliminate any possible confusion as to the terms of the Defendant's confinement, this court will order the trial court to vacate the originally imposed sentences of seven years on each count. *See State v. Mayer*, 99-3124 (La.App. 3 Cir. 3/31/00), 760 So.2d 309 (*citing State ex rel. Haisch v. State*, 575 So.2d 816 (La.1991)).

Consistent with *Pitre*, we order the trial court to vacate Defendant's originally-imposed five-year sentences for his convictions of possession of cocaine and possession of hydrocodone prior to the imposition of the habitual offender sentences.

### (2) Error in Court Minutes

Second, although the court minutes of sentencing indicate Defendant's habitual offender sentences were imposed at hard labor, the sentencing transcript indicates the court sentenced Defendant as a third felony offender to ten years on each count of his drug possession offenses without indicating whether the sentences were to be served at hard labor. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62.

The trial court is ordered to correct the sentencing minutes to reflect the

sentences imposed by the trial court as shown in the sentencing transcript, which did not mention hard labor. Additionally, the court minutes should be amended to reflect that the ten-year habitual offender sentence was imposed *on each count* of the drug offenses. The court minutes state in pertinent part:

> Court gives reasons and sentences the defendant as a third felony offender: Court sentenced accused for POSSESSION CDS II. POSSESSION CDS III. Court sentenced accused to be committed to the Louisiana Department of Corrections. Accused to serve 10 Year(s). Sentence is to be served at Hard Labor. Sentence is to run concurrent. Sentence is to run consecutive with any other time presently serving. Sentence is also to run consecutive with Count #3, Firearm Possession by a Felon, in this docket number.

The transcript states in pertinent part, however, "I sentence you as a third felony offender, on the two convictions for the Possession of CDS II, to ten years on each account [sic]." As noted above, when there is a discrepancy, the transcript controls. Accordingly, the trial court is ordered to correct the sentencing minutes to reflect that the court imposed a ten-year sentence *on each* of Defendant's two drug convictions.

## INSUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to connect him with the drugs and gun located in the vehicle he was driving, the drugs located in the backseat of the police unit, or the drugs found in the refrigerator of his girlfriend's house. He contends he had no knowledge of any of the drugs or of the gun.

*State v. Miller*, 98-1873, p. 5 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, 120, *writ denied*, 99-3259 (La. 5/5/00), 761 So.2d 541, noted:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);

4

> *State ex rel. Graffagnino v. King*, 436 So.2d 559
> (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982);
> *State v. Moody,* 393 So.2d 1212 (La.1981). The role of
> the factfinder is to weigh the respective credibility of
> each witness. Therefore, the appellate court should not
> second guess the credibility determinations of the
> factfinder beyond the sufficiency evaluations under the
> *Jackson* standard of review. *See State ex rel.*
> *Graffagnino*, 436 So.2d 559, citing *State v. Richardson*,
> 425 So.2d 1228 (La.1983).

Additionally, in *State v. Ortiz,* 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352 (1998), the Louisiana Supreme Court stated:

> When circumstantial evidence is used to prove the
> commission of the offense, La.R.S. 15:438 requires that
> "assuming every fact to be proved that the evidence tends
> to prove, in order to convict, it must exclude every
> reasonable hypothesis of innocence." This is not a
> separate test to be applied when circumstantial evidence
> forms the basis of a conviction; all evidence, both direct
> and circumstantial must be sufficient to satisfy a rational
> juror that the defendant is guilty beyond a reasonable
> doubt. *State v. Porretto*, 468 So.2d 1142 (La.1985).

Defendant was convicted of illegally possessing cocaine, a Schedule II drug, and hydrocodone, a Schedule III drug. La.R.S. 40:964. Louisiana Revised Statutes 40:967(C) provides, in pertinent part, that "[i]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner[.]" Similarly, for a Schedule III drug, "[i]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule III unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner[.]" La.R.S. 40:968(C). Finally, Defendant was convicted of possession of a firearm by a convicted felon.

> A. It is unlawful for any person who has been convicted
> of a crime of violence as defined in R.S. 14:2(B) which is
> a felony or simple burglary, burglary of a pharmacy,
> burglary of an inhabited dwelling, unauthorized entry of
> an inhabited dwelling, felony illegal use of weapons or

dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

La.R.S. 14:95.1.

At trial, nine officers testified concerning their role in the investigation and arrest. Corporal Glenn Hall, of the Alexandria Police Department, was patrolling the streets on February 2, 2010, and pulled Defendant's vehicle over at the request of Detective Gaudin, who was tailing Defendant's car in an unmarked police car. Detective Gaudin was involved in an ongoing investigation into Defendant's drug activities. Upon contact, Corporal Hall handcuffed Defendant and conducted a thorough pat-down for officer safety. Defendant gave Corporal Hall verbal consent to search his vehicle. The corporal then placed Defendant in the passenger side backseat of the police unit. After Defendant was transported to the police station, Corporal Hall found a plastic baggie containing marijuana, packets of cocaine, and several hydrocodone pills in the backseat. The corporal surmised that the drugs belonged to Defendant and that he had secreted them in the backseat after he was put into the unit. Corporal Hall explained that it was routine to search the police unit before taking it out on duty and again after a prisoner or suspect had been transported.

Juan Cruz, a detective in the narcotics division of the Alexandria Police Department, was in the unmarked vehicle with Detective Gaudin. Upon being advised by Corporal Hall that Defendant had given consent to search the car, Detective Cruz commenced the search. He first located a handgun in the backseat.

6

He then saw a small packet of white powder under the driver's seat, next to the console, which later tested positive as cocaine.

Detective Cruz then made contact with Defendant's son's mother, Maria King. After she arrived to pick up her son, believing that Defendant lived with her, he asked for permission to search their residence. After Maria recanted her initial consent, a search warrant was obtained. A Styrofoam cup was located in the refrigerator that contained more hydrocodone pills and two more small packets of cocaine.

Defendant argues that even though drugs and a gun were located in the car he was driving, in the police unit where he was seated, and in the house where his girlfriend lived, there was no evidence that he had any connection with or knowledge of the drugs or the gun. He points out that William Bates, a sergeant with the Alexandria Police Department, who qualified as an expert in fingerprint analysis, affirmed that no identifiable prints were found on the packaging of the drugs or on the gun.

Defendant argues that Newton was left alone in Defendant's vehicle for a short period of time while Defendant was out of the vehicle being patted down by Corporal Hall. At trial, the corporal agreed with this assertion. Defendant argues that Newton dropped the drugs onto the floor of the car at that time. He also contends that Newton was the one who stashed the drugs later found in the backseat of the police unit after Newton was put into the unit.

Moreover, Maria King testified at trial that the car Defendant was driving was her car and that the gun belonged to her. She had bought the gun from a man she knew only as "Bo Peep" a few months prior to the arrest. She had put the gun under the backseat of her car with the intention of selling the gun back to "Bo Peep." She maintained that Defendant was unaware that the gun was there. Furthermore, she said that she saw Newton put the Styrofoam cup in the refrigerator the night before,

7

explaining that although she was currently living with Defendant, at that time she was having a relationship with Newton.

In brief, Defendant argues:

> At the close of the state's case in chief, the evidence was not sufficient to convict Brandon Allen. The fact that the evidence is *entirely* circumstantial and that there is a reasonable alternate hypothesis of innocence (Troy Newton was the possessor of the drugs and Maria King was the possessor of the gun as will be discussed further below), by law result in a lack of sufficient evidence to convict. Even without further motivation, rationalization, or facts, there is simply not enough evidence to result in a verdict of guilty.

The supreme court discussed factors that may be considered when determining whether an accused was in possession of drugs in *State v. Major*, 03-3522, pp. 7-9 (La. 12/1/04), 888 So.2d 798, 802-03:

> Possession of narcotic drugs can be established by actual physical possession or by constructive possession. *State v. Trahan*, 425 So.2d 1222, 1226 (La.1983). A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession. *State v. Harris,* 94-0970, p. 4 (La. 12/8/94), 647 So.2d 337, 338-39.
>
> A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. *Trahan*, 425 So.2d at 1226. Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, this court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs. [*State v.*] *Toups* at p. 4, [01-1875 (La. 10/15/02)], 833 So.2d [910] at 913. The evidence at trial established that defendant had exercised dominion and control over the cocaine hidden underneath the dashboard of the car by virtue of his dominion and control over the vehicle as the driver and professed renter. *Ortega v. United States*, 270 F.3d 540, 545 (8th Cir. 2001); *see also State v. Walker,* 03-188, p. 7 (La.App. 5 Cir. 7/29/03), 853 So.2d 61, 65-

66, *writ denied,* 03-2343 (La. 2/6/04), 865 So.2d 738 (holding that the driver and sole passenger had custody of the car and the cocaine found in the car was within his immediate control even though ownership of the vehicle was not proven). . . .

Furthermore, guilty knowledge is an essential element of the crime of possession of cocaine. [*State v.*] *Sylvia* [01-1406] at p. 3, [La. 4/9/03)] 845 So.2d [358] at 361. However, since knowledge is a state of mind, it need not be proven as fact, but rather may be inferred from the circumstances. *Id.* (citing *Trahan*, 425 So.2d 1222, 1227).

While there is no physical evidence that Defendant possessed the drugs, considering the above factors, the State negated the defense's hypothesis of innocence—that Newton was the sole possessor of the drugs.

At trial, Maria King testified that she and Defendant have two children together, the six-year-old boy who was in the car at the time of the arrest, and a nine-year-old daughter. While they had been in an on/off relationship for years, he was not living with her at the time of arrest. She stated he was living on Main Street in a house his mother owned. Following Defendant's arrest, he insisted he lived at the Main Street house. Detective Cruz testified, however, that he had been doing surveillance on Defendant for several weeks and stated that Defendant was staying at King's apartment. The day after the arrest, Detective Cruz contacted Defendant's mother and, with her permission, searched the Main Street house. There was no indication that anyone was living there. The house was undergoing renovations at the time.

Corporal Wesley Matthews, an officer with the Alexandria Police Department, testified that he helped with the search of King's apartment and found men's clothing and shoes in the master bedroom. He also found Defendant's prison ID badge in the bedroom. King denied that the clothing and shoes belonged to Defendant. She explained that she was storing her brother's clothing and shoes at her mother's request. However, Sandra Williams, King's mother, testified that she never

asked her daughter to store her son's clothing. Moreover, she testified that Defendant was more than less staying with King at the time of the arrest.

The facts show that Defendant had, at least, constructive possession of the drugs. His proximity to the drugs; his access to the area the drugs were found; and his relationship with King, in whose apartment the same type of pills and drugs were located as the pills and drugs found in the vehicle Defendant was driving and the backseat of the police unit, all suggest constructive possession.

The supreme court in *Major* found that a defendant had dominion and control over the cocaine located in the glove compartment of the rented vehicle he was driving. The supreme court stated:

> As driver and ostensible renter of the vehicle, the defendant had complete and authorized access to the glove box and dashboard area where the drugs were found. Furthermore, the location of the drugs was within the reach of and accessible to the defendant as the driver. These facts alone are sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant exercised ample control and dominion over the cocaine to constitute the required element of constructive possession.

*Id*. at 803.

In Defendant's case, the packet of cocaine was located underneath the driver's seat, next to the console. Corporal Hall testified that he located the drugs on the side Defendant was sitting in the backseat, tucked between the seat and the back cushion. A video of Defendant in the backseat of the unit was shown to the jury. The Corporal pointed out the location where he found the drugs in the backseat during the viewing. While Newton was eventually placed into the same police unit, the video shown to the jury showed Defendant squirming extensively around in the backseat before Newton made an appearance.

Moreover, it had been established that Defendant stayed with King. King testified that Newton was in the house the evening before and saw him put the

Styrofoam cup in the refrigerator. He was with Defendant when the car was pulled over. As noted, there was testimony that the hydrocodone pills in the cup in the refrigerator were the same brand of hydrocodone pills found in the police unit where Defendant sat. A person may be in joint possession of a drug in the physical custody of another, if he willingly and knowingly shares with the other the right to control the drug. *State v. Toups*, 01-1875 (La. 10/15/02), 833 So.2d 910.

Finally, the State had to prove guilty knowledge. Knowledge need not be proved by facts, but may be inferred from the circumstances. *Major*, 888 So.2d 798. In this case, Defendant attempted to hide the drugs. He hid the one packet of cocaine under the driver's seat, and he attempted to dump the drugs to escape detection when he was placed in the police unit. Moreover, he lied about where he was staying even though the house he claimed to live in was unoccupied and under construction.

To prove possession of a firearm by a convicted felon, the State must prove:

> (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year period of limitation; and (4) general intent to commit the offense. La.R.S. 14:95.1; *State v. Husband,* 437 So.2d 269 (La.1983); *State v. Tatum*, 27,301 (La.App. 2 Cir. 9/27/95), 661 So.2d 657. Constructive possession is sufficient to satisfy the first element. *State v. Day,* 410 So.2d 741 (La.1982); *State v. Wesley*, 28,941 (La.App. 2 Cir. 12/13/96), 685 So.2d 1169. Constructive possession occurs when the firearm is subject to a defendant's dominion and control, even if only temporarily. *State v. Wesley, supra*. Mere presence in the area where the firearm is found, or mere association with someone else who is in possession of the firearm, does not necessarily establish possession. *State v. Fisher,* 94 2255 (La.App. 1 Cir. 12/15/95), 669 So.2d 460, *writ denied,* 96-0958 (La. 9/20/96), 679 So.2d 432. Moreover, constructive possession contains an element of *awareness*, or knowledge that the firearm is there and general intent to possess it. *State v. Evans,* 29,675 (La.App. 2 Cir. 9/24/97), 700 So.2d 1039, *writ denied*, 97-2942 (La. 1/9/98), 705 So.2d 1121, *and citations therein.*

11

*State v. Ball,* 31,515, p. 3 (La.App. 2 Cir. 12/9/98), 733 So.2d 1, 3, *aff'd,* 99-428 (La. 11/30/99), 756 So.2d 275.

At trial, Detective Cruz testified that King and Defendant each had their own vehicles. Defendant had a purple vehicle that he mostly drove. However, at trial, King testified that she had asked Defendant to pick up her car from work because she was having trouble with it. She stated that she was aware that the gun was in the car. She described the gun before identifying it in court. She stated she had bought the gun in 2008, paying two hundred dollars for it. She stated that while she had usually kept the gun in her bedroom closet, she had put it into the car a few months before because she was going to meet the man she had bought the gun from for the purpose of selling it back to him. However, he did not make the appointment, and the gun remained in the backseat of the car. She insisted that Defendant did not know the gun was there. She had put the gun in that particular location in the car because the seat lifted up and locked down. Corporal Hall testified that after he pulled Defendant over and secured him, he told Detective Cruz to search the backseat because he had seen Defendant reach back there as he was pulling the vehicle over. Detective Cruz located the gun under the seat cushion where the Defendant's son had been sitting. The State argues in brief, that "[a]s was stated in *State v. Ball*, supra, the facts create 'an irresistible inference' the defendant was in possession of the firearm as he was the driver of the vehicle with a loaded .45 caliber pistol located under the seat occupied by his six year old child." However, Corporal Hall admitted the back window of the car was tinted and it was difficult to see into the backseat. It should be noted that a child was sitting on the lift-up seat and that it would have been difficult to have placed the gun under the seat had that been Defendant's purpose for reaching into the backseat.

The direct and circumstantial evidence establishes "an irresistible inference" that Defendant possessed the drugs. The one packet of cocaine was found

under the driver's seat; the marijuana, cocaine, and hydrocodone pills located in the police unit were found on the same side Defendant was seated; the drugs in the refrigerator were of the same type of packets and pills as those found in the car and the police unit; and it was established that Defendant at least stayed with King in her house. Moreover, Defendant exhibited a guilty mind when he lied about where he was staying and tried to rid himself of the drugs in the police vehicle.

However, except for the fact the gun was hidden in the car Defendant was driving, there was little to infer that he had knowledge of the gun. Accordingly, the evidence was insufficient to find him guilty of possession of a firearm. We reverse the conviction of possession of a firearm by a felon, enter an order of acquittal on that conviction, and vacate the sentence on that conviction.

## MOTIONS FOR NEW TRIAL

Defendant filed a "Motion for New Trial" on August 22, 2010, arguing that the evidence was insufficient. On September 17, 2010, he filed a "Supplemental Motion for New Trial," wherein he claimed newly discovered evidence. The trial court denied the motions.

Defendant argues the trial court erred when it denied his motions because the convictions were contrary to the law and evidence:

> [I]n light of the testimony of Maria King who testified concerning the gun and how she acquired it and how she placed it in the car. Further, Ms. King testified to her relationship with Mr. Newton who placed the drugs in the refriderator [sic]. Defendant['s] counsel further argued about Ms. King testifying that she had a relationship with Mr. Newton which provided his motivation for setting up Mr. Allen.

The trial court denied the first motion, stating that "there are no new issues in those, so I'm gonna deny the Motion for New Trial with regard to the Motion to Suppress, the cause challenges and the insufficiency of evidence. I did hear

the testimony, but ah, you know, I, I guess the jury just didn't believe Ms. King.  I don't know."

There was no error in the trial court's ruling regarding the drugs. However, as suggested above, we find that the evidence was insufficient to sustain the conviction for possession of a handgun by a convicted felon.

Defendant further argues the trial court erred when it denied his supplemental motion for a new trial, in which he claimed newly discovered material evidence that would have affected the outcome of the trial.

Louisiana Code of Criminal Procedure Article 851, in pertinent part, provides:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> The court, on motion of the defendant, shall grant a new trial whenever:
>
> . . . .
>
> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty[.]

The standard of review applicable to a motion for new trial based on newly discovered evidence was set forth in *State v. Cavalier*, 96-3052, 97-103, p. 3 (La. 10/31/97), 701 So.2d 949, 951, as follows:

> A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at the trial; and (4) that the evidence is of such a nature that it would probably

14

> produce a different verdict in the event of retrial. *State v.*
> *Hammons,* 597 So.2d 990, 994 (La.1992); *State v.*
> *Knapper*, 555 So.2d 1335, 1339 (La.1990); *State v.*
> *Prudholm,* 446 So.2d 729, 735 (La.1984). In ruling on
> the motion, "[t]he trial judge's duty is not to weigh the
> evidence as though he were a jury determining guilt or
> innocence, rather his duty is the narrow one of
> ascertaining whether there is new material fit for a new
> jury's judgment." *Prudholm*, 446 So.2d at 736.

Furthermore, in *State v. Guidry*, 94-678, p. 9 (La.App. 3 Cir. 12/7/94), 647 So.2d 502, 509, citing *State v. Clayton*, 427 So.2d 827 (La.1982), this court held that "[t]he trial court's application of these precepts to newly discovered evidence is entitled to great weight, and its denial of a new trial will not be disturbed on appeal absent a clear abuse of that discretion."

Defendant attached to the supplemental motion three handwritten statements by Kendrick Thomas, Derrick Dorsey, and Anderson Traylor, which stated that Newton was in love with King and wanted Defendant out of the picture by any means, including setting him up for a "bogus" charge. Defendant argued that their testimony at trial would have shown that Newton possessed the drugs and that he set Defendant up.

At the hearing, the State argued that this information was not newly discovered. At the trial, King had testified that she and Newton had had a recent affair that she had not told Defendant about until just before trial. The jury heard about the possible "love interest" and undoubtedly considered it. Furthermore, the admissibility of the proposed evidence must be considered. The supreme court stated in *State v. Coleman,* 05-1617, pp. 11-12 (La. 6/29/07), 959 So.2d 465, 472-73:

> The admissibility at a new trial of the newly
> discovered evidence is a factor in determining its
> "fitness" for consideration by a jury at a second trial, and
> it should be addressed before a conviction is reversed and
> a new trial ordered. *See State v. Watts*, 00-0602 at 12-13,
> [(La. 1/1403)] 835 So.2d [441] at 452. While the trial
> court did not make a specific finding as to the hearsay
> nature of Williams's testimony at the conclusion of the
> hearing, its remarks clearly suggested that admissibility

15

would likely be an insurmountable obstacle had the evidence been offered for trial. Yet, because the trial court found the evidence would not result in a different verdict if presented to another jury, it was not required to decide the admissibility of that evidence at a subsequent trial. *Cf. State v. Watts*, 00-0602 at 12-13, 835 So.2d at 452.

At any rate, the defense contends the victim's statements to Williams do not constitute hearsay, or should be admissible under various exceptions to the hearsay rule. Hearsay is defined by La.Code Evid. art. 801(C) as a "statement, other than the one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted" and is inadmissible except as provided by law. La.Code Evid. art. 802. Because the defendant seeks to introduce the out-of-court statements to prove that the police rather than the defendant possibly caused the victim's injury, Williams's testimony as to what the victim had allegedly communicated to her, either verbally or non-verbally, about the police beating him certainly constitutes hearsay evidence.

Similarly, in the current case, the trial court did not make a specific finding that the alleged newly discovered evidence was inadmissible, but did state: "Well, I, ah, I'm gonna deny the request for a new trial on the Supplemental Motion. I, I just don't see where any of this would make a difference if it were admissible. Ah, and I certainly can't figure out how. . . is it Derrick Dorsey and Anderson Traylor's statements could be admissible under, under any circumstances that presented themselves at trial." We agree. A review of the written statements shows that they are hearsay statements which also accuse Newton of being an informant and a drug addict. The statements appear vague and unreliable. For these reasons, the trial court did not abuse its discretion when it denied Defendant's supplemental motion for new trial on the drug charges.

## ADMISSIBILITY OF LABORATORY REPORTS

At trial, the State established that the cocaine, marijuana, and hydrocodone pills were the alleged substances by submitting into evidence two

16

certified copies of reports issued by North Louisiana Criminalistics Laboratory pursuant to La.R.S. 15:499-501. Defendant objects to the use of the laboratory reports as a violation of his right to confront and cross-examine the witnesses who performed the analysis of the substances. He points to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004) and *Melendez-Diaz v. Massachusetts*, __ U.S.__, 129 S.Ct. 2527 (2009). *In Crawford*, it was held that testimonial statements of witnesses absent from trial may be admitted only when the declarant was unavailable and only when the defendant had opportunity to cross-examine. In *Melendez-Diaz*, the United States Supreme Court held that the power to subpoena the analysts could not substitute for the right of confrontation because compulsory process was of no use to a defendant.

However, Defendant made no objection at trial to the admission of the certified laboratory report without the appearance of the analyst. "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. art. 841.

## ENHANCEMENT OF DRUG OFFENSES

Defendant argues that the trial court improperly enhanced both possession of narcotics convictions. As noted, the trial court originally sentenced him to two five-year terms on the possession of narcotic convictions, to be served concurrently. At the habitual offender hearing, the State amended the bill of information to request that both of the possession of narcotic convictions be enhanced. Defendant objected. However, after taking the matter under consideration, the trial court found that Defendant was a third felony offender and determined that it was appropriate to enhance both convictions and sentenced Defendant to ten years on each conviction to be served concurrently.

Defendant contends that under the circumstances of his case, La.R.S. 15:529.1 contemplates that only one conviction may be enhanced and desires that this

17

court vacate the two sentences, remand the case to the trial court with the instructions that the State must elect which sentence is to be enhanced, and for the trial court to resentence Defendant accordingly. We disagree.

In *State v. Shaw*, 06-2467, pp. 17-18, 20 (La. 11/27/07), 969 So.2d 1233, 1243-44, 1245 (footnote omitted), the supreme court found that the trial court did not err in enhancing all five of defendant's sentences based upon his adjudication as a third felony offender, stating:

> As we have explained, the habitual offender statute was enacted "as a deterrent and a warning to first offenders and as a protection to society by removing the habitual offender from its midst." *State v. George,* 218 La. 18, 26, 48 So.2d 265, 267 (La.1950). The habitual offender statute does not create a separate offense or punish an individual for past crimes; rather, the statute increases punishment on the basis of an individual's status as a repeat offender. The goal is to deter and punish recidivism by punishing more harshly those who commit the most crimes. *State v. Johnson,* 97-1906, p. 8 (La. 3/4/98), 709 So.2d 672, 677. ("Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a long sentence because he continues to break the law."). Contrary to the conclusion of the [*State ex rel.*] *Porter* [*v. Butler*, 573 So.2d 1106 (La.1991)] court, this goal is not served when a defendant commits multiple felonies in a continuous episode of criminal activity but is punished more severely for only one of those felonies. The purpose of the statute, to dissuade first offenders from committing subsequent felonies and to punish more harshly those who commit the most crimes, is served only when the repeat offender is subject to sentence enhancement for each subsequent felony. Enhancing the sentence on only one of multiple convictions arising out of a single criminal episode actually thwarts the goal of protecting society by removing the most egregious offenders from its midst. The single enhancement produces the incongruous and illogical consequence of removing any incentive the statute might otherwise impose on a recidivist to cease criminal activity once begun, a result directly at odds with the purpose of the statute. We cannot endorse an interpretation of the statute that would attribute this consequence to the legislation. *Savoie v. Rubin,* 01-3275, p. 4 (La. 6/21/02), 820 So.2d 486, 488 ("The function of the court is to interpret the laws so as to give them the

18

meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings."). Contrary to the conclusion of the *Porter* court, we find that it is unnecessary to superimpose upon the habitual offender statute a limitation permitting enhancement of only one of multiple sentences entered on the same date arising out of a single criminal episode.

. . . .

We therefore hold that the language of LSA-R.S. 15:529.1 contains no prohibition against enhancing multiple sentences obtained on the same date arising out of a single criminal act or episode. Unlike the *Porter* court, we find no legislative purpose or policy that is contradicted by failing to read such a prohibition into the statute's language. Nor does a plain reading of the statute generate absurd or unjust results. In clear and unambiguous terms, the statute exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction. There is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode. To the extent that the opinions in *Porter* and [*State v.*] *Sherer* [411 So.2d 1050 (La.1982)] are inconsistent with this conclusion, they are overruled.

Accordingly, there was no error in the trial court's decision to enhance both of the narcotics possession convictions.

## SUPPRESSION OF EVIDENCE

Defendant argues that the evidence should have been suppressed because the stop of his vehicle initiated by the police was without sufficient reasonable suspicion or probable cause. Furthermore, Defendant asserts he did not give free and voluntary consent to search the vehicle. Finally, he contends the search of his girlfriend's residence was done without a proper search warrant.

Detective Latisha Gaudin was contacted by a confidential informant and advised that Defendant was at that moment selling cocaine. The CI told her the neighborhood Defendant would be in, described the vehicle, and gave her the license

19

plate number. The detective, together with Kary Beebe, a sergeant with the Alexandria Police Department, Detective Cruz, Detective Matthews, Sergeant Newman Bobb, and DEA Special Agent Scott Wright, went in two separate unmarked vehicles to find Defendant. Defendant was located in the neighborhood the CI described.

Detective Gaudin stated that before they contacted Corporal Hall to initiate the stop, the officers in the first car behind Defendant observed him committing a traffic violation when he crossed over the centerline while negotiating a curve in the road. The detective was advised after she arrived at the scene of the traffic stop that Defendant gave verbal consent to search his vehicle, wherein the cocaine was located under the driver's seat and the gun in the backseat. She agreed that written consent to search the vehicle was not obtained until after the drugs and the gun were found.

Detective Gaudin testified that because Detective Cruz had an ongoing narcotics investigation which included Defendant, it was suspected that there were more drugs at his residence. She stated that although it had been decided to get a search warrant, King granted permission to search the residence when she arrived at the scene to pick up her son. Once at the residence, however, she withdrew her permission. The detective then proceeded to obtain the search warrant while the officers waited outside the residence with King. After the detective left, two dogs made a "free air" sniff and alerted to two locations on the exterior of the apartment. Once she had obtained the warrant, Detective Gaudin called ahead, and the officers commenced the search.

Defendant testified and denied he crossed the center line while driving. He denied that he gave verbal consent to search the vehicle. He said he was intimidated into signing the consent form. He denied that he lived with King and their

20

children. He admitted that he had been booked on thirty-seven different occasions and had been convicted seven times of various offenses.

Defendant argued at the hearing that Corporal Hall did not see him commit a traffic offense and there was not reasonable suspicion to warrant a stop based on the confidential informant's information. He contended that the State further failed to prove there was consent to search the vehicle, noting that Detective Gaudin admitted the consent form was not signed by Defendant until after the search had been conducted. Finally, he argued that the officers had entered King's house on the pretext of escorting the women to the restroom and began to search the premises without the search warrant. For all of these reasons, Defendant argues that the police conducted illegal searches and seizures and that the trial court, therefore, erred when it denied his motion to suppress the evidence.

### Traffic Violation

> The Fourth Amendment to the United States Constitution and Art. 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. *State v. Boss*, 04-457, p. 4 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585.
>
> Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops, which permit officers to stop and interrogate a person who is reasonably suspected of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968*); State v. Belton*, 441 So.2d 1195 (La.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); *State v. Gresham,* 97-1158, p. 6 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, *writ denied*, 98-2259 (La. 1/15/99), 736 So.2d 200. The *Terry* standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense' and to demand that the person identify himself and explain his actions." *State v. Melancon*, 03-514, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, *writ denied*, 03-3503 (La. 4/23/04), 870 So.2d 297.

The "reasonable suspicion" necessary for an investigatory stop "is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference." *State v. Melancon, supra*. Without reasonable suspicion, an investigatory stop is illegal and the evidence seized from that stop is suppressible. *State v. Triche,* 03-149, p. 4 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 84, *writ denied,* 03-1979 (La. 1/16/04), 864 So.2d 625.

*State v. Francois*, 04-1147, pp. 5-6 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1009-10.

Defendant argues that the officers intended to stop his vehicle regardless of whether there was a valid traffic violation. He maintains that Corporal Hall initially testified that he did not see the reported traffic violation. Sergeant Beebe reported that as they were observing Defendant's vehicle, they saw him cross over the double yellow line while taking a curve on the roadway. They then called for a patrol officer to initiate a traffic stop. Corporal Hall was in the immediate vicinity and promptly spotted Defendant's vehicle and pulled him over. In *State v. Elliott*, 09-1727 (La. 3/16/10), 35 So.3d 247, the supreme court discussed the legality of a traffic stop when the officer had not seen the traffic offenses but was told by witnesses of the offenses. *Elliott* explained that:

The determination of whether probable cause exists for an arrest or reasonable suspicion for an investigatory stop is a purely objective inquiry that takes into account "all of the information known collectively to the law enforcement personnel involved in the investigation." *State v. Landry*, 98-3008, p. 5 (La. 1/8/99), 729 So.2d 1019, 1022 (citing *United States v. Klein*, 93 F.3d 698, 701 (10th Cir. 1996) ("Probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest.")); *United States v. Butler*, 74 F.3d 916, 921 (9th Cir. 1996) ("Probable cause can also be demonstrated through the collective knowledge of police officers involved in an investigation, even if some of the information known to other officers is not communicated to the arresting officer."). Thus, the

arresting officer need not have talked to the informants or had any knowledge of their reliability to act on a report from the police dispatcher relying upon information supplied by a witness, provided that the information conveyed to the dispatcher had the requisite indicia of reliability to justify a stop based on reasonable suspicion.

We are aware that a growing number of jurisdictions have concluded that drunken or erratic driving presents such an immediate risk of public safety that it constitutes an exception to the general rule of *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), that police may not act on anonymous tips unless they corroborate them in sufficient detail. *See Virginia v. Harris,* --- U.S. ----, 130 S.Ct. 10, 175 L.Ed.2d 322 (2009) (Roberts, C.J., dissenting from the denial of certiorari) ("The majority of courts examining the question have upheld investigative stops of allegedly drunk or erratic driver, even when the police did not personally witness any traffic violations before conducting the stops. . . . A minority of jurisdictions, meanwhile, take the same position as the Virginia Supreme Court, requiring that officers first confirm an anonymous tip of drunk or erratic driving through their own independent observation."); *see also Cottrell v. State,* 971 So.2d 735, 745 (Ala.Crim.App.2006) ("We now join our sister states of Vermont, Iowa, Wisconsin, South Dakota, New Jersey, New Hampshire, Hawaii, Delaware, and Kansas, and hold that an anonymous tip concerning a potential drunk driver may be sufficiently reliable to justify a *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop without independent corroboration by the police."); *State v. Sousa,* 151 N.H. 297, 855 A.2d 1284, 1288 (2004) ("Since *J.L.* a few intermediate state appellate courts have concluded that anonymous tips of drunk or erratic driving are unreliable, requiring police corroboration of the tip's incriminating details. By contrast, every state court of last resort that has directly addressed the issue has concluded that, in a drunk or erratic driving case, certain tips are sufficiently reliable and detailed, when viewed in the totality of the circumstances, to establish reasonable suspicion.") (citations omitted).

*Id*. at 251-52.

In the current case, Corporal Hall did not need independent corroboration of the tipster's information. He was advised by Sergeant Beebe that Defendant had committed a traffic violation. It was not an anonymous tip.

23

The information was sufficiently reliable to allow the stop. *See also State v. Perry*, 39,644 (La.App. 2 Cir. 4/13/05), 900 So.2d 313, wherein the second circuit held that a traffic stop was valid after one officer who was following a suspected drug dealer radioed another police officer to pull over Perry because he was not wearing his seat belt.

Accordingly, in the current case, considering the above jurisprudence, Corporal Hall had the requisite reasonable suspicion to initiate a traffic stop based on the detective's information and request.

## Confidential Informant's Tip

Defendant argues that "[i]n effect, each of the officers involved in the initial traffic stop testified that they had every intention of stopping the vehicle driven by Mr. Allen regardless of any traffic violations or probable cause other than the information furnished to them by the confidential informant." However, we conclude there was sufficient reasonable suspicion to stop and detain Defendant from the information given to Detective Gaudin by the confidential informant.

> Under certain circumstances, a tip by an informant can supply reasonable suspicion to detain and question a person. *State v. Rodriguez*, 99-914, p. 4 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, *writ denied*, 00-0599 (La. 4/7/00), 759 So.2d 765. Generally, the informant's tip must contain predictive information regarding the future behavior of the reported suspect, and the tip must be corroborated. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *State v. Robertson*, 97-2960, p. 3 (La. 10/29/98), 721 So.2d 1268, 1270.
>
> . . . .
>
> In a hearing on a Motion to Suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. *State v. Tovar,* 03-513, p. 4 (La.App. 5 Cir. 10/15/03), 860 So.2d 51, 54. LSA-C.Cr.P. art. 703(D). "The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression." *State v. Flagg*, 01-65, p. 4 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138,

24

> *writ denied*, 01-2534 (La. 9/20/02), 825 So.2d 1159 (citation omitted). To determine whether the trial court's denial of the Motion to Suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing, as well as the evidence presented at trial. *State v. Butler,* 01-907, p. 4 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.

*Francois*, 900 So.2d 1010-11.

Detective Gaudin testified that she had received information from a confidential informant that a black male, Brandon Allen, was riding around with narcotics in the vehicle. He told her Defendant was in a blue Impala, selling powder cocaine, and that he was currently in the area of Polk Street. He further gave her the license plate number of the vehicle. She stated that she had received information from this informant that had resulted in four arrests in the past six months and had no reason to disbelieve him.

The tip was not given by an anonymous informant; rather it was given by an informant who had work with Detective Gaudin successfully in the past. In *State v. Holmes,* 08-719, p. 7 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 279, *writ denied,* 09-816 (La. 1/8/10), 24 So.3d 857, the fifth circuit discussed sufficiency of a confidential informant's tip:

> Tips provided to police by confidential informants can supply sufficient reasonable suspicion to conduct an investigative stop under certain circumstances. The tip must accurately predict the offender's conduct in sufficient detail to support a finding that the informant had reliable information regarding the illegal activity. *See, e.g., Id.* The tip must also be corroborated by the police. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If an informer's tip accurately predicts the offender's future behavior it gains an additional modicum of reliability. *Id.* Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. *See, e.g., State v. Francois*, 04-1147, p. 7 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010. An informant's past record for accuracy and reliability is another factor taken into account when determining the

25

reliability of the tip in question. *State v. Austin,* 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879, *writ denied,* 05-0830 (La. 11/28/05), 916 So.2d 143.

The Louisiana Supreme Court has noted:

> While probable cause must be determined on the totality of the circumstances, an informant's reliability, veracity and basis of knowledge are "all highly relevant." *Illinois v. Gates*, 462 U.S. 213[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983); *State v. Ruffin,* 448 So.2d 1274, 1278 (La.1984). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant's knowledge and the informant's reliability, when examined under the totality of the circumstances, are established.
>
> *State v. Fisher*, 97-K-1133, p. 8 (La. 9/9/98), 720 So.2d 1179, 1184.

In *Holmes*, the fifth circuit decided there were several factors in favor of admissibility of the evidence. The informant had proved very reliable over several years, and the police corroborated the defendant's name, physical description, and vehicle. Moreover, the CI accurately advised where the vehicle could be located. Noting that the police showed no evidence that the defendant was committing, had committed, or was about to commit an offense and that it was "pellucidly clear that the tip provided absolutely no predictive information," the fifth circuit found that the sergeant had the requisite reasonable suspicion to stop the defendant's car, stating:

> It is also true that the confidential information's tip did not provide every pertinent detail, as was the case in *White*. For example, the informant omitted mention which the defendant resided, where in the vehicle the cocaine would be located, and what quantity of cocaine would be found. As the United States Supreme Court noted, a failure to provide every detail is not a fatal error, but it is significant.

*Id*. at 281.

In this case, the confidential informant gave information regarding Defendant driving around and selling cocaine in a specific area. He also gave a

description of the Defendant's girlfriend's car. At trial, King testified that Defendant seldom drove the vehicle as he had his own, thereby evidencing the CI's specific knowledge and familiarity of Defendant's activities. This fact was corroborated by Detective Cruz, who was also at the time investigating allegations of Defendant's drug activity and knew Defendant had his own car. In fact, as discussed above, it was because the detective had conducted surveillance on Defendant that he knew Defendant had lied about where he was staying at the time of the arrest. Accordingly, there was no error in the trial court's determination that there was reasonable suspicion to stop Defendant's vehicle based on the CI's information.

## Consent

It was not disputed that the written consent form to search Defendant's vehicle was not signed by Defendant until after the search had been conducted and the drugs and gun were found. Defendant, however, testified he did not give verbal consent to search the vehicle and argued that he was not aware that he had signed a consent form.

> Consent to search is one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). When the state relies on consent to justify a warrantless search, it has the burden of proving the consent was freely and voluntarily given. Voluntariness of consent is a question of fact which the trial judge must determine based on a totality of the circumstances. *State v. Edwards,* 434 So.2d 395 (La.1983); *State v. Jennings,* 39,543 (La.App. 2d Cir. 3/2/05), 895 So.2d 767, *writ denied,* 05-1239 (La. 12/16/05), 917 So.2d 1107; *State v. Paggett*, 28,843 (La.App. 2d Cir. 12/11/96), 684 So.2d 1072.

*State v. Thompson*, 46,039, pp. 7-8 (La.App. 2 Cir. 2/23/11), 58 So.3d 994, 1000.

Furthermore, voluntariness is a question for the trier of fact to determine based on the totality of the circumstances and is to be given great weight upon

appellate review. *State v. Snelling*, 09-1313 (La.App. 3 Cir. 5/5/10), 36 So.3d 1060, *writ denied*, 10-1301 (La. 12/17/10), 51 So.3d 16.

Corporal Hall testified at the suppression hearing that as he was patting Defendant down, he acted like he was trying to conceal something, so the corporal asked him if he had anything to hide and did he have any problems with "us" searching the vehicle. "He said yes, he said no, he didn't have any problems with us searching it, and yes we could." Corporal Hall conveyed this information to the narcotics officers as soon as they arrived at the scene. Detective Gaudin testified that she was advised by Detective Matthews that Defendant had given oral consent to search so she prepared a consent to search form for Defendant's signature and discussed it with him.

At the suppression hearing, Defendant denied he gave verbal permission to search the car. "Never, never." He stated that when they asked for his consent, he told the officer "I told' em no. I said, bring the, ah, canine unit." He explained he signed the consent form after the search was conducted because he was told "it was gonna take a little longer for me to bond out. They say, ah, gave me ultimatum, say you can sign it now, you sign you later, but it's gonna take you a long time to bond out." When asked if this had been his experience in the past, he stated: "Not the first time I heard it. But the other times I never signed nothin'." While stating that he was not familiar with the booking process, he admitted he has been booked for various offenses thirty-seven times within a ten-year period, including seven convictions, several of which were drug offenses.

Defendant was no stranger to arrest, search and seizure, and the booking process, such that when it was explained to him that he was signing a consent form, he would have refused to sign if he had, as he testified, so adamantly refused verbal consent. While the burden is on the State to prove voluntary consent, there is nothing

28

to indicate that Defendant's verbal consent and then the written consent were not freely and voluntary given.

## Search of Residence

Defendant does not challenge the search warrant that was issued February 2, 2010, to search King's residence. He only argues that the officers conducted a warrantless search of the residence. He states that "[t]he witness testified that when she went in the house and that all of the officers went in with her and started to search the house without the warrant. This amounts to a warrantless search of the residence. It is undisputed that the officers did not have permission to search the residence."

At the suppression hearing, Detective Gaudin testified that after they arrived at the house, King withdrew her permission to search the premises. The premises were secured, and King and her cousin, Jasma Fairley, were not allowed to enter the house at that time. The detective left and obtained a search warrant. She stated that once she had the warrant, she called ahead and advised the officers waiting at the apartment.

Fairley testified that once at King's apartment, she asked to be allowed inside to go to the bathroom, but was made to wait for about two hours before she was allowed inside. She said that as she and King entered the house, officers went with them to search the bathroom before they could use it. She then stated:

> Ahm, as I was leaving, as I was leaving the house, going back to the car, ahm, they stayed in and with they (sic) gloves and stuff and just started searching the house, and that's when my cousin walked back in and was like where's the search warrant? And they was like, it's on its way.

Testimony established that a search warrant was obtained. Fairley testified that they were made to wait two hours before being allowed into the house to use the restroom. Detective Gaudin obtained a search warrant and called ahead and

29

advised the waiting officers. According to Fairley's testimony, when asked about the search warrant, an officer said that it was on its way. Once a lawful warrant is obtained, there is no requirement that the warrant be served before the search. *State v. Williams*, 193 So.2d 787 (La.1967). *See also State v. Fournette*, 08-254 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, *writs denied,* 08-1815, 08-1824 (4/17/09), 6 So.3d 789, wherein the officers entered the premises to secure it while another officer obtained the search warrant. The fourth circuit held that "because the warrant was not based upon any information gleaned from the illegal entry, it was not tainted by the entry, and the inevitable discovery doctrine would apply in this case if the search warrant was lawfully issued." *Id*. at 214.

A defendant bears the burden of proving that evidence seized pursuant to a search warrant should be suppressed. *State v. Williams*, 03-302 (La.App. 4 Cir. 10/6/03), 859 So.2d 751, *writ denied*, 04-3093 (La. 11/28/05), 916 So.2d 133. In the current case, Defendant failed to meet his burden of proof.

There is no merit to these alleged errors. There was reasonable suspicion sufficient to make a traffic stop of Defendant's vehicle, plus the confidential informant's tip gave the officer reasonable suspicion that Defendant had committed and was going to commit criminal offenses. Defendant's consent to search the vehicle was freely and voluntarily given. Moreover, the apartment where Defendant was staying was lawfully searched, and the seizure of the drugs in the refrigerator as a result of the investigation was lawful.

## CONCLUSION

For all of the above reasons, Defendant's two convictions for possession of Schedule II and Schedule III substances are affirmed. There was insufficient evidence to support the conviction for possession of a firearm by a felon. We, therefore, reverse this conviction, enter an order of acquittal, and vacate the sentence.

As for the two enhanced sentences imposed on the convictions for possession of Schedule II and Schedule III substances, the trial court did not err when it enhanced both sentences.

We order the trial court to vacate the Defendant's original sentences of five years each imposed for possession of cocaine and possession of hydrocodone prior to the imposition of the habitual offender sentence. We also order the trial court to correct the January 20, 2011 sentencing minutes to correctly reflect the habitual offender sentences imposed by the trial court as reflected in the sentencing transcript, specifically, that the sentences were not imposed at hard labor and that a ten-year sentence was imposed *on each count* of the two drug possession convictions.

**CONVICTIONS FOR POSSESSION OF COCAINE AND POSSESSION OF HYDROCODONE AFFIRMED.**

**CONVICTION FOR POSSESSION OF A FIREARM BY A CONVICTED FELON REVERSED, ORDER OF ACQUITTAL ENTERED, AND SENTENCE VACATED. REMANDED WITH INSTRUCTIONS.**